536 F.2d 699
 UNITED STATES of America, Plaintiff,
v.
MANUFACTURERS NATIONAL BANK OF DETROIT, LIVERNOIS-LYNDON
STREETS, SAFETYDEPOSIT BOX # 127, DETROIT,
MICHIGAN, Defendant.
Petition of Alzalia WINGATE and Toni Wingate, Petitioners-Appellants,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 76-1296.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 6, 1976.
Decided June 16, 1976.
Rehearing Denied July 22, 1976.
 
 S. Allen Early, Jr., Charles S. Brown, Detroit, Mich., for appellant.
 Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Frederick J. Dana, Detroit Strike Force, U. S. Dept. of Justice, Detroit, Mich., for appellee.
 Before CELEBREZZE, MILLER* and LIVELY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 The issues in this case arose out of two searches conducted pursuant to separate search warrants issued by a federal magistrate. On October 6, 1975 an F.B.I. agent filed with the magistrate an extensive affidavit based on an eighteen month long "investigation of an organized illegal gambling business operating . . ." in Detroit. The affidavit identified a number of persons as participants in the illegal activities, including James Wingate who was described as the "banker" for a numbers operation handling approximately $25,000 per day in bets. The affidavit contained a detailed description of the numbers operation in the Detroit area, based on "personal observations and participation in this investigation, as well as receipt of information from confidential informants whose information has been corroborated by independent surveillances conducted by the Federal Bureau of Investigation and by information supplied by other confidential informants . . .."
 
 
 2
 The affidavit identified by street number thirteen separate buildings or residences in the Detroit area where it was believed evidence relating to illegal gambling would be found. Each location was connected to specific information received from a particular informant whose past reliability was vouched for. Among the residences identified in the affidavit was that of James W. Wingate at 18805 Capitol, Southfield, Michigan. The thirteen requested search warrants were issued and the Capitol Street residence was searched on October 6th.
 
 
 3
 On October 7, 1975 the same F.B.I. agent who had filed the October 6th affidavit filed a second one with the magistrate who had issued the October 6th warrants. The first two numbered paragraphs were identical to the corresponding opening paragraphs of the October 6th affidavit. The October 7th affidavit then concluded as follows:
 
 
 4
 3. That pursuant to the execution of a search warrant authorized by the Honorable Barbara Hackett on October 6, 1975, the residence of JAMES WINGATE, located at 18805 Capitol Street, was searched by Agents of the Federal Bureau of Investigation. Approximately Three-Thousand Dollars ($3,000.00) in currency was located in the residence of 18805 Capitol Street. During the course of that search, JAMES WINGATE who was present remarked to the investigating agents in substance that he did not keep gambling paraphernalia or gambling receipts at his residence; that he did have a safety deposit box, but that he did not keep the key on the premises at 18805 Capitol Street; he stated that the safety deposit box was at MANUFACTURERS BANK he did not disclose the location.
 
 
 5
 Subsequently, the investigating agents found in the residence at 18805 Capitol Street, a receipt for payment for a safety deposit box, # 110 at MANUFACTURERS NATIONAL BANK OF DETROIT, Livernois-Lyndon Branch, Detroit, Michigan.
 
 
 6
 This Agent has learned that box # 110 was closed on March 18, 1974, but that a new and larger box, number # 127, was opened on March 19, 1974, in the names of AZALIA WINGATE, wife of JAMES WINGATE, and TONI WINGATE, daughter of JAMES WINGATE.
 
 
 7
 I, therefore, have reason to believe that from statements made by JAMES WINGATE during the course of the search at his residence at 18805 Capitol Street, that gambling receipts and gambling records are contained in a safety deposit box, # 127, located at the MANUFACTURERS NATIONAL BANK OF DETROIT, Livernois-Lyndon Branch, Detroit, Michigan. In addition an effort was made to locate any other safety deposit box held by Manufacturer National Bank on behalf of James Wingate. No other safety deposit boxes appear to be held by James Wingate.
 
 
 8
 /s/ EDWARD GRIMSLEY
 
 EDWARD GRIMSLEY
 
 9
 Special Agent/Federal Bureau of Investigation
 
 
 10
 A search warrant was issued for safety deposit box # 127, and the search yielded $500,200.00 in currency. A motion was made by Alzalia Wingate and Toni Wingate pursuant to Rule 41(e), Fed.R.Crim.P., for return of the property seized from the lock box. This appeal is from an order of the district court denying this motion. The appellants argue that the October 6th affidavit was not sufficient to establish probable cause to search the Wingate residence. They maintain that the search of the residence was illegal and that all information pertaining to the safety deposit boxes was derived from this search and should be suppressed as "fruit of the poisonous tree." They further contend that even if the October 6th search was lawful the October 7th affidavit was not sufficient to establish probable cause for the search of box # 127, and that the magistrate was not permitted to rely on the October 6th affidavit to cure deficiencies in the October 7th affidavit in finding probable cause for a search of box # 127.
 
 
 11
 We have carefully considered the October 6th affidavit. To the extent that the information contained in it was not based upon personal observations and experience of the affiant or surveillance by other F.B.I. personnel it was derived from statements of unnamed informants. The affidavit recited past experiences with all the informants in which their information had proven reliable, corroboration of their statements about the Detroit numbers operation by F.B.I. surveillance and the fact that each informant was deeply involved personally in numbers betting. In addition, the affidavit set forth conversations between several of the informants and James Wingate as the source of some of the information. The affidavit described many details of the "James Wingate Mutuels Combine."
 
 
 12
 The October 6th affidavit satisfied the two-pronged test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), for crediting hearsay information from unnamed informants in determining whether probable cause for issuance of a search warrant has been established. The affidavit contained a sufficient statement of "some of the underlying circumstances from which the informant concluded . . ." that illegal numbers gambling was being carried on and that money used in the operations would be found at the Wingate residence as well as some of the underlying circumstances from which the affiant had concluded that the informants were "credible" or their information was "reliable." Id. at 114, 84 S.Ct. 1509. See Naples v. Maxwell, 393 F.2d 615 (6th Cir. 1968), cert. denied, 393 U.S. 1080, 89 S.Ct. 850, 21 L.Ed.2d 772 (1969). Appellants complain that the affidavit contained no statement that the affiant, or anyone else, had actually seen money being taken into the Wingate residence or had viewed money there. Their reliance on Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), is misplaced. The October 6th affidavit did not contain a recital of activities which "contain no suggestion of criminal conduct when taken by themselves . . ." which the affiant sought to convert into evidence of a crime on mere suspicion. Spinelli, supra, 393 U.S. at 418, 89 S.Ct. at 590. Nor did the affidavit contain the "(m)ere affirmance of suspicion or belief . . ." of the affiant. Nathanson, supra, 290 U.S. at 47, 54 S.Ct. at 13.
 
 
 13
 The October 6th affidavit was sufficient to establish probable cause to believe that illegal gambling activities which are a federal offense under 18 U.S.C. § 1955 were being carried on, United States v. Williams,459 F.2d 909 (6th Cir. 1972); and that evidence of these activities would be found on the premises at 18805 Capitol. As we wrote in United States v. Eisner, 297 F.2d 595, 597 (6th Cir.), cert. denied, 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962), "In determining what is probable cause, the Commissioner is not called upon to determine whether the offense charged has in fact been committed." The magistrate to whom an application for a search warrant is presented must apply common sense standards, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); and when a determination of probable cause has been made, it is entitled to great deference by reviewing courts. Spinelli v. United States, supra, 393 U.S. at 419, 89 S.Ct. 584; United States v. Shropshire, 498 F.2d 137, 142 (6th Cir. 1974), petition for cert. dismissed, 420 U.S. 901, 95 S.Ct. 838, 42 L.Ed.2d 845 (1975).
 
 
 14
 The October 7th affidavit did not contain the detailed information concerning the Detroit numbers operations which was set forth in the affidavit of the previous day. After repeating the opening paragraphs of the earlier affidavit verbatim, it was limited to a statement of the results of the search of the Wingate residence and the assertion that the evidence gained in this search established probable cause for a search of safety deposit box # 127. The magistrate was entitled to consider the October 6th affidavit in conjunction with the one presented the following day in determining whether probable cause had been established for a search of the bank box of appellants. Both affidavits referred to the same eighteen-month investigation and the alleged complicity of James Wingate in the Detroit numbers operations. The second affidavit referred specifically to the search warrant which the magistrate had issued the previous day. This issue is controlled by our decisions in United States v. Nolan, 413 F.2d 850 (6th Cir. 1969), and DiPiazza v. United States, 415 F.2d 99 (6th Cir. 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971).
 
 
 15
 In Nolan separate affidavits were presented to a magistrate by an officer seeking warrants to search the automobile and the living quarters of a suspect. It was claimed that the affidavit with respect to the automobile was deficient. The court wrote
 
 
 16
 We believe that consistent with the Fourth Amendment the facts supplied the Commissioner by both affidavits could be taken into account by him in determining probable cause in relation to each. 413 F.2d at 853.
 
 
 17
 It would needlessly restrict the discretion of a magistrate to hold that two affidavits filed so close in time and referring to a single criminal investigation which was still continuing could not be considered together in determining whether to authorize a further search. We do not believe that United States v. Acosta, 501 F.2d 1330 (5th Cir. 1974), cert. denied, 423 U.S. 891, 96 S.Ct. 188, 46 L.Ed.2d 122 (1975), leads to a different conclusion. There the magistrate relied on his own information, not on statements contained in a written affidavit. The court stated,
 
 
 18
 . . . we believe the weight of authority clearly is that any information relied upon by a federal magistrate in determining whether probable cause exists must be made a part of the affidavit or affidavits supporting the warrant. 501 F.2d at 1334. (emphasis added).
 
 
 19
 When read together the two affidavits provided the basis for a reasonable inference that evidence pertaining to the Detroit numbers operations would be found in box # 127. A magistrate may draw "the usual inferences which reasonable men draw from evidence." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).
 
 
 20
 Appellants argue that as " . . . innocent and uninvolved third parties, (they) were deprived of their Fourth and Fifth Amendment rights due to failure of the government to utilize a subpoena duces tecum or demonstrate its impracticality before applying for a warrant to search safe deposit box # 127." Once it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime. The necessity that there be findings of probable cause as to two factors the commission of a crime and the location of evidence affords protection from unreasonable searches and seizures, which are the only ones forbidden by the Fourth Amendment. We are not persuaded that the contrary rule adopted by the district court in Stanford Daily v. Zurcher, 353 F.Supp. 124 (N.D.Calif.1972), is required by either the Fourth or Fifth Amendments or the Federal Rules of Criminal Procedure.
 
 
 21
 The final ground for reversal which the appellants have argued in this court charges misrepresentation or omission of material facts by agent Grimsley in the October 7th affidavit. This issue was not presented to the district court for a ruling. In fact, at the hearing on their Rule 41 motion counsel for appellants stated that he did not challenge "the veracity of the statement" referring to the identical material which is now claimed to be either a misrepresentation or an incomplete account of the agent's conversation with James Wingate during the October 6th search. This issue is not properly before the court, and we will not consider it. Gibson v. First Federal Savings & Loan Association of Detroit, 504 F.2d 826 (6th Cir. 1974); Wiper v. Great Lakes Engineering Works, 340 F.2d 727 (6th Cir.), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965).
 
 
 22
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable William E. Miller died on April 12, 1976 and did not participate in this opinion