STATE of Tennessee, Appellee,

v.

James A. SMITH, Appellant.

Court of Criminal Appeals of Tennessee,
at Nashville.

March 31, 1992.

Bruce E. Myers, Livingston, for appellant.

Charles W. Burson, Atty. Gen., Kimbra R. Spann, Asst. Atty. Gen., Nashville, William E. Gibson, Dist. Atty. Gen., John A. Moore, Asst. Dist. Atty. Gen., Livingston, for appellee.

## OPINION

TIPTON, Judge.

The defendant, James A. Smith, appeals as of right from judgments entered by the Overton County Criminal Court pursuant to his convictions by a jury for first degree burglary while possessing a firearm and assault with intent to commit first degree murder. The trial court sentenced the defendant under the 1982 Sentencing Act, as amended, as a Range I, standard offender to twelve years for the burglary and ten years for the murder assault, the sentences to be served concurrently.

The defendant raises three issues for our determination which we characterize as follows:

(1) Whether the affidavit used to obtain a warrant to search the defendant's home may be used to provide probable cause for the issuing of a second warrant to obtain a sample of the defendant's blood;

(2) whether the trial court erred in accepting the verdict of the jury; and

(3) whether the sentences were within the appropriate range.

## I

In the early morning hours of July 23, 1987, an armed assailant broke through an outer door in gaining entry to the residence of Lelia Ledbetter and attempted to come through an inside door. Failing this, the assailant fired through the inside door. The assailant went outside and fired through the front door and bedroom windows. Mrs. Ledbetter observed that the assailant was a slim, tall male. His face was covered with what she discerned to be a paper bag. Mrs. Ledbetter was struck by glass shards, but her injuries were not serious.

Mrs. Ledbetter called police. The assailant shot into one of the responding vehicles as it arrived on the scene and then fled to a nearby hilltop, from which he continued firing.

Investigators at the scene observed blood on the floors and walls of several of the rooms; they collected samples. They observed seven bullet holes in the windows and walls and recovered five spent shell casings.

Investigators quickly developed the defendant as a suspect, and they arrested him for reasons unrelated to the case under review. Incident to this arrest, officers seized four shell casings. They recovered a .38 caliber revolver partially buried approximately sixty to eighty feet from the defendant's residence.

Upon arrival at the jail, the defendant was given a chemical test to determine whether he had recently fired a weapon; the test indicated that he had. Also, a blood sample was taken from him.

Other forensic evidence marshaled against Smith included:

(1) The same .38 caliber revolver recovered by police near Smith's residence had been discovered missing from the residence of one of Smith's neighbors after Smith had visited the neighbor's home on July 22, 1987.

(2) Comparison of the spent shells and the .38 caliber revolver was consistent

with the conclusion that the shells had been fired from the .38 caliber revolver. (3) The defendant's blood typing was consistent with the blood typing of samples collected from Mrs. Ledbetter's residence and from the defendant's blue jeans.

Jerry Gore, a sergeant with the Livingston Police Department, testified that he heard the defendant state, while in jail awaiting trial, "I could have killed the Sheriff and all of his deputies that morning, and will the next time."

## II

The first issue raised by the defendant arises from the fact that two search warrants were issued in this case. The first authorized officers to search the defendant's residence. The second authorized officers to procure a blood sample from the defendant's body. Smith contends that the second warrant was issued without probable cause.

At the suppression hearing, Officer Roger Phillips testified that two affidavits were written by him and another officer at the same time. He said that he signed both affidavits and that he "filed application for two search warrants." The search warrants, each with an attached affidavit, were submitted into evidence. The affidavit for the search of the defendant's house shows probable cause in the context of connecting the defendant to the burglary and shooting at Mrs. Ledbetter's house so as to allow a search of his home for bloody clothes and a second weapon. The house warrant reflects that it was issued at 12:25 p.m., July 23, 1987.

The affidavit attached to the warrant for a sample of the defendant's blood essentially stated the following:

A burglary occurred at Mrs. Ledbetter's house. Shots were fired at Mrs. Ledbetter. During the break in attempt the burglar was cut by glass. Mr. Smith was found in his residence and arrested on a criminal court capias, he had numerous fresh cuts on his hands. Dried blood was found at scene.

The proof showed that the second warrant was issued by the same magistrate at 12:28 p.m., July 23, 1987.

The trial court held that the affidavit for the second warrant did not provide probable cause to issue the warrant. Given the fact that the affidavit lacks any connection between the defendant and the commission of the crimes, this ruling appears correct. *See* LaFave, *Search and Seizure*, § 3.7(d) (2nd ed. 1987). However, the trial court denied suppression and held that, in issuing the two warrants "almost simultaneously," the magistrate had sufficient cause to incorporate probable cause from the first warrant in his finding probable cause to issue the second warrant.

The defendant contends that the affidavit in support of the house warrant could not be used to determine the existence of probable cause to issue the second warrant. Obviously, the state contends that the magistrate may determine probable cause from the use of both affidavits. Neither party cites authority for their position. Although it is an issue of first impression in Tennessee, other jurisdictions have considered the matter.

In *United States v. Nolan*, 413 F.2d 850 (6th Cir.1969), an F.B.I. agent filed two affidavits to obtain two search warrants— one for the defendant's room and a second for his car. The affidavit filed with the car warrant did not provide probable cause. The Sixth Circuit held that there was compliance with the Fourth Amendment because, as the amendment requires, there were facts supported by oath constituting probable cause, particularly describing the place to be searched and the things to be seized. It stated that, under the Fourth Amendment, the issuing commissioner was entitled to take into account both affidavits before him in finding probable cause as to each warrant.

In *Nolan*, the Sixth Circuit, also, recognized that further consideration should be given under Rule 41(c), Fed.R.Crim.P., since the car warrant failed to include reference to both affidavits, i.e., it said the "affidavit" (not affidavits) of the agent was considered. However, the court

viewed the deficiency to be an administrative error by the commissioner which neither defeated the proper police conduct nor invalidated the warrant.

Other cases reflect that circumstances will allow for probable cause to be determined from separate affidavits filed to obtain several warrants in the same criminal investigation. In *State v. Kalai*, 537 P.2d 8 (Haw.1975), warrants for the defendant's arrest and the search of his home were issued simultaneously upon separate affidavits. In upholding the search, the court relied upon the arrest warrant affidavit, stating that "[w]here two closely related affidavits, referring to the same individual and the same criminal charge, are presented to the issuing magistrate simultaneously, he may consider both for the purpose of ascertaining the existence of probable cause." 537 P.2d at 10; *accord State v. White*, 275 S.C. 500, 272 S.E.2d 800 (1980).

In *United States v. Serao*, 367 F.2d 347 (2d Cir.1966), *vacated and remanded on other grounds sub nom, Piccioli v. United States*, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968), *indictment dismissed on remand*, 394 F.2d 989 (2d Cir.1968), four search warrants for separate apartments and an arrest warrant were issued on the same day by the same commissioner, all relating to the same gambling investigation. The Second Circuit upheld the search of one of the apartments by considering the affidavits filed for all of the warrants in its determination of probable cause. It stated the following:

> It would be hypertechnical for the Commissioner not to act upon an entire picture disclosed to him in interrelated affidavits presented to him on the same day. And, as the United States Supreme Court admonished in *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."

367 F.2d at 350.

In *United States v. Fogarty*, 663 F.2d 928 (9th Cir.1981), the Ninth Circuit commented that the magistrate is not required to use tunnel vision and may consider multiple affidavits even though filed for different purposes. 663 F.2d at 930. In *United States v. Manufacturers National Bank of Detroit*, 536 F.2d 699 (6th Cir.1976), the Sixth Circuit relied upon *United States v. Nolan, supra*, and noted that "[i]t would needlessly restrict the discretion of a magistrate to hold that two affidavits filed so close in time and referring to a single criminal investigation which was still continuing could not be considered together in determining whether to authorize a further search." 536 F.2d at 702.

■ Most of these cases do not involve any specific reference to the second affidavit in the targeted search warrant or its underlying affidavit. However, from a Fourth Amendment perspective, the issue is not one of formal reference or incorporation. Instead, as *United States v. Nolan, supra*, indicated, it involves whether or not the magistrate had sufficient facts before him, under oath, in affidavit form, to conclude that probable cause existed.

In this case, the house warrant affidavit reflects that shots were fired into Mrs. Ledbetter's house from .38 caliber and .22 caliber guns, that the house was burglarized with the burglar cutting himself while in the house, that the defendant was apprehended near the location of the shooting with fresh cuts on his hand, and that a .38 caliber revolver was found near the defendant's residence. In this regard, the second affidavit refers to the same victim, shooting, burglary and defendant as the first and adds the fact that dried blood was found at the scene.

If the magistrate were either unaware of the first affidavit or did not consider it in his determination, obviously, the first affidavit could not be considered on the issue of probable cause. However, it would defy reason and the evidence presented at the suppression hearing in this case if we were to conclude that the magistrate issued the second warrant without consideration of the affidavit submitted in support of the house warrant. We hold that neither the Fourth Amendment to the United States Constitution nor article 1, section 7 of the

Tennessee Constitution were violated by consideration of the two affidavits in this case to determine probable cause to issue the second warrant.

The issue of the warrant's validity does not end with this determination. The issuance and execution of warrants must conform, as well, to requirements provided by statutes and our criminal rules. *See Hampton v. State*, 148 Tenn. 155, 252 S.W. 1007, 1008 (1923); Rule 41(c) and (d), Tenn. R.Crim.P. The following statutes deal with affidavits relative to the issuance of search warrants:

*T.C.A. § 40–6–103. Probable cause and affidavit.*—A search warrant can only be issued on a probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched.

*T.C.A. § 40–6–104. Examination of complainant.*—The magistrate, before issuing the warrant, shall examine on oath the complainant and any witness he may produce, and take their affidavits in writing, and cause them to be subscribed by the persons making them. The affidavits must set forth facts tending to establish the grounds of the application, or probable cause for believing that they exist.

Rule 41(c), Tenn.R.Crim.P., requires a warrant to "issue only on an affidavit or affidavits sworn to before the magistrate and establishing the grounds of issuing the warrant."

■ These provisions specifically require that the proof relied upon by the magistrate to determine probable cause be included in one or more affidavits. They necessarily contemplate that the affidavit or affidavits will be kept by the magistrate in order that the probable cause determination may be subsequently reviewed. However, we note that no statute or rule requires an affidavit upon which a search warrant is issued to be attached or otherwise kept with the warrant. Rule 41(c) contains mandatory record and filing requirements for warrants, but not for affidavits. In Tennessee, the affidavit is not considered part of a search warrant even if it appears on the same printed form as the warrant. *Minton v. State*, 186 Tenn. 541, 212 S.W.2d 373 (1948); *Hampton v. State, supra.*

This Court has noted that the purpose of Rule 41(c) in requiring the magistrate to retain a copy of the search warrant is to "insure the purity of the search process," by preventing alteration or stale execution. *State v. Gambrel*, 783 S.W.2d 191, 192 (Tenn.Crim.App.1989). For a similar purpose, it is important for the magistrate to retain the affidavits. Likewise, common sense would dictate that the affidavits relied upon by the magistrate in issuing a warrant would be kept with the magistrate's copy of the warrant.

In fact, some jurisdictions have statutes requiring the issuing magistrate to retain the supporting affidavit and to attach it to the returned warrant. *See Commonwealth v. Jordan*, 397 Mass. 494, 492 N.E.2d 351 (1986). In these circumstances, it has been held that an unattached, previous affidavit for another warrant may be considered only if it is incorporated by reference in the second affidavit. *Id.* 492 N.E.2d at 353. We note that Tennessee has a similar requirement of reference or incorporation when the state seeks to show the constitutional and statutory requirement of particular descriptions in a warrant by looking to the descriptions contained in the affidavit. *See Hackerman v. State*, 189 Tenn. 130, 223 S.W.2d 194 (Tenn. 1949); *Minton v. State, supra; O'Brien v. State*, 158 Tenn. 400, 14 S.W.2d 51 (1929); *cf. Webb v. State*, 173 Tenn. 518, 121 S.W.2d 550 (1938).

■ When the issue is properly raised, the trial courts and appellate courts conduct a review of the issuing magistrate's probable cause determination. This review should not have to depend upon the testimony of the magistrate as to what was considered, *see, e.g., United States v. Horton*, 503 F.2d 810 (7th Cir.1974), or upon guess work as to what was considered. Thus, even though no statute exists to require the affidavits to be attached to the search warrant, if a previous affidavit is not referred to or incorporated in a search

warrant or in its underlying affidavit, the previous affidavit is subject to being disregarded in the review process.

■ In this regard, we note that the printed form used for the second warrant in this case states that the "Affidavit is attached hereto and is hereby referred to for its contents," but the attachment was the deficient affidavit. Further, we are mindful of our Supreme Court's previous admonition in *Everett v. State*, 182 Tenn. 22, 184 S.W.2d 43 (1944):

> The use of printed forms has made the procurement of a search warrant the merest formality, considering the fundamental constitutional rights which the search invades. Certainly, this Court can do no less than to require that the few blank spaces be filled in, and the other details of the formality be carried out with care and precision.

184 S.W.2d at 45.

However, in this case, the evidence showed, in effect, the simultaneous submission of two affidavits by the same officer to the same magistrate to obtain separate warrants. The affidavits clearly showed that they related to the same criminal investigation and to the same targeted individual. Even though it is better practice to incorporate both affidavits by specific reference, whether the reference is made in the affidavits or the warrant, itself, there is neither any statute nor rule of procedure prohibiting the magistrate from considering both affidavits. Both affidavits were immediately filed and preserved and they inherently referred to the same crimes and defendant. Under these circumstances, the ministerial error reflected by the second warrant's reference to an affidavit (not affidavits), was not fatal to the magistrate's consideration of both affidavits in issuing the second warrant. Therefore, the second warrant was issued upon probable cause and was valid.

### III

■ Next, the defendant asserts that the trial court improperly sentenced him for the enhanced offense of first degree burglary while possessing a firearm in count one, when the jury returned a verdict of guilt for only first degree burglary. Under the 1982 Sentencing Act, as amended, a Range I, standard offender was exposed to a range of five to ten years for first degree burglary, which was enhanced to a range of ten to twelve years six months if the offender possessed a firearm at the time of the burglary. *See* T.C.A. § 39–3–401(b) and (c) (1982); *Walker v. State*, 606 S.W.2d 531 (Tenn.1980).

Count one of the indictment alleged the following:

> that JAMES A. SMITH heretofore on or about the 23rd day of July 1987, while in possession of a firearm, ... did unlawfully, feloniously and forcibly commit burglary in the First Degree by breaking and entering a certain dwelling house belonging to Leila Ledbetter in the nighttime, with intent of the defendant then and there to commit a felony, to-wit: Murder in the First Degree of Leila Ledbetter....

In its instructions to the jury, the trial court stated the elements of both first degree and second degree burglary and advised the jury of the sentence enhancement if the defendant possessed a firearm. Relative to the various verdicts it could return, the trial court instructed the jury as follows:

> Now when you retire to consider your verdict in this Indictment you will first inquire, is the Defendant guilty of burglary in the first degree while in the possession of a firearm as charged in the first Count of the indictment. And if you find the Defendant guilty of this offense, beyond a reasonable doubt, your verdict should be, we the jury find the Defendant guilty of burglary in the first degree while in possession of a firearm as charged in the first Count of the indictment. However, if you have a reasonable doubt that the offense of burglary was accomplished—however, if you have a reasonable doubt that the offense of burglary was accomplished while in the possession of a firearm, then you will proceed to inquire whether or not he is guilty of burglary in the first degree. If

you should find beyond a reasonable doubt the Defendant is guilty of burglary in the first degree, your verdict should be, we the jury find the defendant guilty of burglary in the first degree.

The jury verdict form, signed by the foreman, states: *"1st Count*—Guilty in the first degree."

At the sentencing hearing, the trial court stated that when the verdict came in, it probably should have said something at that time, because the trial court recalled advising the jury that the fact of the firearm should be set out in the verdict if so found. However, the trial court treated the jury report as a general verdict of guilty on count one and imposed a twelve-year sentence upon the defendant for armed first degree burglary. The defendant asserts that the record reflects that the jury, in fact, did not return a finding of guilt regarding his possession of a firearm.

■ A jury verdict must be in language which is clear and certain as to its meaning and which cannot be mistaken. *Baldwin v. State*, 213 Tenn. 49, 372 S.W.2d 188 (1963).

Unquestionably the verdict of the jury should contain language which is so clear and certain that its meaning can reasonably be determined. Wharton's Criminal Procedure, 12th ed. Ch. 34, Verdict, § 577, p. 138. "Since the reception of a verdict is not solely a ministerial as distinct from a judicial act, when the jury return (sic) into court with a verdict, it is not a matter of course to receive it in the form in which it is rendered. It is the duty of the Court ... to look after its form and substance, so far as to prevent an unintelligible, or a doubtful, or an insufficient verdict from passing into the records of the court." See C.J.S.2d Volume 23A, Verdict § 388, p. 1042.

*State v. Henley*, 774 S.W.2d 908, 915 (Tenn. 1989). In fact, if the trial court considered the verdict unclear, it should have requested the jury to return to deliberations with a direction to amend the verdict and put it in proper form. *See State v. Tyson*, 603 S.W.2d 748, 755 (Tenn.Crim.App.1980); *Gwinn v. State*, 595 S.W.2d 832, 835 (Tenn. Crim.App.1979).

Standing alone, the verdict returned on count one lends itself to some ambiguity, but in the context of the trial court's instructions to the jury the verdict gains clarity. It does not lend itself to a finding by the jury beyond a reasonable doubt regarding the defendant's possession of a firearm. It fully complies with that portion of the trial court's instructions relating to the return of a verdict without a finding regarding the defendant's possession of a firearm. Given the record in this case, the jury verdict reflects that the defendant was convicted of first degree burglary for which he was exposed to a sentencing range of five to ten years. Therefore, the twelve-year sentence imposed by the trial court for armed burglary was inappropriate. The judgment of conviction under count one should be modified to reflect the offense of first degree burglary and the trial court must resentence the defendant for such offense.

■ Finally, the defendant asserts that the trial court considered the wrong range in imposing a ten-year sentence under count two for assault with intent to commit first degree murder. T.C.A. § 39–2–103(a) provides that such an assault, if bodily injury does not occur, carries a punishment of not less than five nor more than twenty-five years. Under the 1982 Sentencing Act, the defendant, as a Range I, standard offender, was exposed to a range of five to fifteen years.

The trial court found the presence of various sentencing enhancement factors, such as, a previous history of criminal convictions and behavior, the victim was particularly vulnerable because of her age and the defendant used a firearm during the assault. *See* T.C.A. § 40–35–111. The record supports these findings. As the defendant points out, the record reflects that the trial court incorrectly stated that the range of punishment was five to twenty-five years. However, we cannot ignore the fact that the ten-year sentence imposed upon the defendant was well within the appropriate range of punishment and is fully justified by the evidence in this case.

No prejudice is shown by the record in this regard and this sentence is proper.

The judgment and sentence for the conviction of assault with intent to commit first degree murder are affirmed. The judgment regarding the burglary conviction shall be modified to reflect a conviction for first degree burglary and that case is remanded to the trial court for a new sentencing hearing and the entry of an appropriate judgment consistent with this opinion.

BIRCH and WADE, JJ., concur.