# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 9, 2003 Session

## STATE OF TENNESSEE v. STACY L. MACK and MARTRESS SHAW

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7237     Jon Kerry Blackwood, Judge**

---

**No. W2002-01828-CCA-R3-CD  - Filed January 22, 2004**

---

The defendants appeal their convictions of possession of more than 0.5 grams of cocaine with intent to deliver.  The defendants allege error in the trial court's failure to suppress evidence seized pursuant to a search warrant and denial of their motions for judgment of acquittal.  Upon review, we reverse the failure to suppress the search warrant and reverse and dismiss the convictions of both defendants.  The conviction of Stacy Mack is reversed due to insufficiency of the evidence, and Martress Shaw's conviction is reversed due to insufficiency of evidence after suppression of the search warrant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed and Dismissed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., joined.  ROBERT W. WEDEMEYER, J., filed a separate opinion dissenting in part and concurring in part.

William Dan Douglas, Jr., Ripley, Tennessee, for the appellant, Stacy L. Mack.

D. Michael Dunavant, Ripley, Tennessee, for the appellant, Martress Shaw.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey Anne Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

This case arises from the execution of a search warrant on Defendant Mack's residence and the subsequent seizure of drugs and other evidence by law enforcement officials on November 2,

2001.  The Lauderdale County Grand Jury indicted Defendant Mack and Defendant Shaw for possession with intent to deliver more than 0.5 grams of cocaine.  Before trial, Defendant Mack and Defendant Shaw filed motions to suppress the drugs and drug paraphernalia seized from Defendant Shaw's car and Defendant Mack's residence.  Following the suppression hearing, the trial court denied the Defendants' motions to suppress the evidence.  The Defendants were tried on April 29, 2002, in the Lauderdale County Circuit Court, and a jury convicted both of possession of more than 0.5 grams of cocaine with intent to deliver, pursuant to Tennessee Code Annotated Section 39-17-417 (Supp. 2001).  The trial court sentenced Defendant Mack to an eight year community corrections sentence and Defendant Shaw to twenty-three years in prison.  Both Defendants timely filed motions for judgment of acquittal or a new trial, which the trial court denied.  The Defendants now appeal.

### A. Suppression Hearing

At the suppression hearing held on April 22, 2002, Detective Jeff Tutor, a drug investigator for the Ripley Police Department, testified that he drafted an Affidavit for Search Warrant that he presented to Judge Janice C. Craig on October 30, 2001, requesting a search warrant to search the premises at 209 Volz Circle in Ripley, Tennessee.  The affidavit and the search warrant were typed on the same page, with the affidavit appearing above the search warrant.  The affidavit stated:

> Personally appeared before me, **Investigator Jeff Tutor, Ripley Police Department**, and makes oath that he has reasons to believe that there is probable cause for believing that **Stacy Mack** – is/are in possession of the following described property, to wit: **Cocaine Base and all drug paraphernalia related to the storage, packaging, sale, and/or distribution of Cocaine Base** contrary to the laws of the state of Tennessee, upon the following described property to wit: **a wood framed single story dwelling with green siding and black shingle roof situated at 209 Volz Cir. in Ripley/Lauderdale County Tennessee**, and his reasons for such belief are that Affiant has **received information within the last 72 hours from a confidential and reliable informant that Cocaine Base could be purchased at the above said residence.  Acting upon this information Affiant did meet with, search and wire, with an audio monitoring device, a confidential and reliable informant.  Said informant then went to the above said residence to attempt to purchase Cocaine Base.  Affiant followed said informant to the said residence and observed said informant at said premises and Affiant heard the transaction where the said informant purchased a substance from an individual at said residence.  Said informant then returned to Affiant with a substance that did field test positive for Cocaine Base.** He therefore asks that a warrant issue to search the person and premises of said **Stacy Mack** as above described in said County, where he believes said **Cocaine Base and all paraphernalia related to the storage, packaging, sale, and/or distribution of Cocaine Base** is/are now possessed, contrary to the Laws of Tennessee.

Based on the evidence presented in the affidavit, the judge granted Detective Tutor's request for a search warrant.  The search warrant, which was also prepared by Detective Tutor, stated:

Proof by affidavit having been made before me by **Investigator Jeff Tutor, Ripley Police Department** that there is probable cause for believing the Laws of the State of Tennessee have been and are being violated by **Stacy Mack** by having in his/her possession **Cocaine Base, and all paraphernalia related to the storage, packaging, sale, and/or delivery of Cocaine Base, Cocaine, Marijuana** being the premises occupied by **Stacy Mack** said premises being a **wood framed single story dwelling with green siding and black shingle roof in Ripley**, situated in Lauderdale County, Tennessee; you are therefore commanded to make an immediate search of the person and premises herein above described for the following property **Cocaine Base and all drug paraphernalia related to the storage, packaging, sale, and/or distribution of Cocaine Base** and if you find same, or any part thereof, to bring it forthwith before me, at my office, in Ripley, of said County and State.

Detective Tutor testified that he did not type "209 Volz Circle" on the search warrant, rather he typed the address on the affidavit. On cross-examination, Detective Tutor admitted that, had he been unfamiliar with the case, he would be not be able to locate Defendant Mack's residence using only the search warrant.

Following the suppression hearing, the trial court denied the Defendants' motions and made the following findings of fact:

1. That the defendants have standing to challenge the validity of the search warrant.
2. The description of the premises to be searched contain the address of "209 Volz Cir. in Ripley" as part of the affidavit for search warrant. Below the affidavit in the search warrant is the warrant itself. Although "209 Volz Cir." is not included in the warrant, the affidavit and the warrant itself adequately describes the property to be searched.
3. The search warrant was directed to search the premises of Stacy Mack.
4. Stacy Mack was left a copy of the warrant by the officers.

### B. Trial

The following evidence was presented at the trial of the Defendants held on April 29, 2002. Detective Tutor testified that on the night of November 2, 2001, law enforcement officers from the Ripley Police Department and the Lauderdale County Sheriff's Department executed a search warrant on the residence of the Defendant Mack, located at 209 Volz Circle[1] in Ripley, Lauderdale County, Tennessee. Officer Gregg Land stated that he, along with Detective Jeff Tutor, Detective John Thompson, Detective Brian Kelly, Officer Chris Bailey, Officer Debbie Kirkpatrick, and Tim Mirick executed the search warrant, and searched the above address.

Detective Thompson testified that, as the detectives approached the house, they saw a dark-colored Lincoln parked outside the residence with the lights off and the engine running. He stated

---

[1] The street name in the suppression hearing transcript and the trial transcript appears to be spelled phonetically, as it is written "Bowles Circle" rather than "Volz Cir." as listed on the affidavit and in the defendants' briefs.

that it was later established that the vehicle was owned by Defendant Shaw. Thompson testified that, as the officers approached, the lights of the vehicle were turned on and it appeared to be ready to leave the yard in front of the house. Detective Thompson explained that he and Detective Kelly blocked the vehicle from leaving the residence while Detective Tutor and Officer Land went up to the house to serve the search warrant. Detective Thompson stated that Defendant Shaw was in the driver's seat, Defendant Mack was in the front passenger's seat, and Reginald Donnell Connelly[2] was in the back seat.

On cross-examination, Detective Thompson testified that he did not see any unusual activity going on in the vehicle when he approached it, nor did he see any suspicious behavior or transactions occur between Defendant Mack, Defendant Shaw, and Connelly. Detective Thompson stated that after Detective Tutor and Officer Land performed a protective sweep of the house, Defendant Mack, Defendant Shaw, and Connelly were handcuffed, brought inside the house, and secured in the living room.

Detective Thompson stated that after reading the search warrant, the officers conducted a search of the residence. Officer Land testified that during the search of the house, he found a box cutter in the bedroom shared by Defendant Mack and Defendant Shaw. Detective Tutor testified that the corner of a small plastic bag was found in an open kitchen cabinet, which field-tested positive for cocaine residue. He further testified that the box cutter discovered by Officer Land field-tested positive for cocaine residue. Detective Thompson stated that during the course of the search, he asked Connelly to open his mouth and saw a foreign object in Connelly's mouth, which the officers removed. Detective Thompson testified that the object retrieved from Connelly's mouth was a bag containing 1.9 grams of cocaine.

During his testimony, Detective Tutor listed the items that the officers confiscated during the search of the house, including: three cellular telephones; some clothes which still had the tags on them; some "high dollar jewelry;" and $395 in cash, which officers found on Defendant Shaw. Detective Tutor testified that these types of items are often found when searching the premises of drug dealers. He explained that drug dealers will often trade drugs for stolen clothes and jewelry. Detective Thompson explained that the 1.9 grams of cocaine found in Connelly's mouth had a street value of approximately $380, roughly equivalent to the amount of cash found on Defendant Shaw. On cross-examination, Detective Tutor acknowledged that, aside from the cocaine residue found in the corner of the small plastic bag and on the box cutter, officers did not find any drugs, other illegal substances, drug paraphernalia or weapons on Defendant Mack or Defendant Shaw, or in the house. Further, he admitted that officers found no drugs, other illegal substances, drug paraphernalia or weapons in Defendant Shaw's vehicle. Detective Tutor admitted to having seen pay stubs from World Color Press in the house, however, he did not confiscate this evidence because he "didn't feel that the pay stubs had anything to do with whether or not [Defendant Shaw] sold cocaine."

---

[2] Connelly's name also appears as "Regional Donnell Conley."

Defendant Mack testified that the money found on Defendant Shaw was money he earned working at World Color Press, and that Defendant Shaw had cashed paychecks earlier that day. Defendant Mack also explained that Connelly had been at her house working on a doghouse and that neither she nor Defendant Shaw knew that Connelly had cocaine or from where he got it. Defendant Mack stated that she had received the "high dollar jewelry" as birthday and Christmas gifts and that the box cutter came from World Color Press, where Defendant Shaw worked. Defendant Shaw did not testify at the trial.

## II. Analysis

On appeal, Defendants Mack and Shaw allege: (1) that the trial court erred in denying their motions to suppress evidence obtained pursuant to a search warrant; and (2) that the evidence presented at trial was insufficient to support their convictions.

### A. Motions to Suppress

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23; see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. However, we review the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 22-23; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Defendants Mack and Shaw contend that the trial court erred in denying their motions to suppress evidence obtained pursuant to a search warrant. They argue that the warrant was insufficient "due to the fact that it [did] not set out in the warrant the location or street address of the residence and premises to be searched." The warrant directed Detective Tutor to search "the premises occupied by **Stacy Mack** said premises being a **wood framed single story dwelling with green siding and black shingle roof in Ripley**, situated in Lauderdale County, Tennessee." The Defendants argue that because the search warrant was insufficient, the evidence should be suppressed since the search and seizure violated their Fourth Amendment rights under the United States Constitution, as well as their Article 1, section 7, rights under the Tennessee constitution.

In its denial of the Defendants' motions to suppress, the trial court found that the Affidavit for Search Warrant contained the address, "209 Volz Cir. in Ripley." Furthermore, the trial court

found that, although the search warrant did not contain the address, "the affidavit and the warrant itself adequately describe[d] the property to be searched."

### 1. The Affidavit

The issue of whether an affidavit is part of a search warrant was decided by this Court in State v. Lowe, 949 S.W.2d 300 (Tenn. Crim. App. 1996). In Lowe, this Court held that while an affidavit is integral to the issuance of a search warrant, "it is not considered an actual part of the search warrant." Lowe, 949 S.W.2d at 303; State v. Smith, 836 S.W.2d 137, 141 (Tenn. Crim. App. 1992). "A search warrant may, however, be construed with a supporting affidavit if the affidavit accompanies the warrant and the warrant expressly incorporates the affidavit by reference." Lowe, 949 S.W.2d at 303 (citing United States v. Blakeney, 942 F.2d 1001, 1024 (6th Cir. 1991)). Furthermore, an affidavit may be utilized to cure a deficient warrant if a "definite reference is made to the affidavit." Lowe, 949 S.W.2d at 304. The Tennessee Supreme Court held that if a warrant does not describe the premises in a sufficient manner, it cannot be corrected by a description appearing in the affidavit even though both the warrant and the affidavit are on one printed instrument, unless the warrant "expressly adopt[ed] the description in the affidavit." Minton v. State, 212 S.W.2d 373, 374 (Tenn. 1948). In Lowe, this Court explained that:

> In sum, the presumption is that an affidavit is not part of a search warrant, even if the two documents are served together, or are both found on the same sheet of paper. If, however, there is explicit reference to the affidavit in the search warrant, the affidavit may be considered part of the warrant.

Lowe, 949 S.W.2d at 304.

Having reviewed the search warrant in this case, we see no "explicit reference" to the incorporation of the affidavit in the search warrant. The language contained in the search warrant, "[p]roof by affidavit having been made before [the magistrate judge]," is insufficient to incorporate the information in the affidavit into the search warrant. An accompanying affidavit "may not be deemed to be incorporated in the warrant merely by being mentioned therein, where the 'warrant contained no 'words of reference' that can be said to have incorporated the affidavit into it.'" 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.5(a), at 84 n.38 (3d ed. Supp. 2003) (quoting United States v. Watkins, 179 F.3d 489, 495 (6th Cir. 1999)). The Sixth Circuit of the United States Court of Appeals held that a warrant failed to incorporate the accompanying affidavit when "[t]he only two references to the affidavit in the warrant were a statement that an affidavit had been 'made before [the magistrate judge],' and that the magistrate judge was 'satisfied that the affidavit ... establish[ed] probable cause to believe that [the items sought would be found on the . . . premises above-described].'" Watkins, 179 F.3d at 495. Accordingly, we conclude that the warrant did not contain any "words of reference" to incorporate the affidavit into it, and that, therefore, the affidavit was not properly incorporated into the search warrant.

### 2. Constitutionality of Search Warrant

Because we have concluded that the affidavit was not incorporated into the search warrant, we must now decide whether the search warrant, which did not contain the street address set out in the affidavit, nonetheless passes constitutional muster. The Fourth Amendment to the United States Constitution requires that a search warrant must particularly describe the premises to be searched. This amendment states, in pertinent part, that "no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly described the place to be searched, and the persons or things to be seized." Similarly, the Tennessee Constitution mandates that a search warrant must "particularly describe" property to be searched to pass constitutional muster. Tenn. Const. Art. 1, sec. 7. This constitutional provision states:

> That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not *particularly described and supported by evidence*, are dangerous to liberty and ought not be granted.

(Emphasis added). The "particularity" requirement is also statutorily mandated. Tennessee Code Annotated section 40-6-103 provides, "A search warrant can only be issued on a probable cause, supported by affidavit, naming or describing the person, and *particularly describing the property*, and the place to be searched." Tenn. Code Ann. § 40-6-103 (2003) (emphasis added).[3] The Tennessee Supreme Court said: "It is expressly required . . . [by the statute] that the search warrant 'particularly' describe 'the place to be searched.' . . . The use of that word makes it clear that the legislature intended the search warrant to be clear of ambiguity as to the place to be searched . . . ." Dolen v. State, 216 S.W.2d 351, 353 (Tenn. 1948).

There are two purposes of requiring the property or premises to be particularly described in the search warrant. State v. Vanderford, 980 S.W.2d 390, 404 (Tenn. Crim. App. 1997). First, this requirement protects the accused from being subjected to an unreasonable search and/or seizure. Id. Second, this requirement "prevent[s] the officer from searching the premises of one person under a warrant directed against those of another." Id. (quoting Squires v. State, 525 S.W.2d 686, 690 (Tenn. Crim. App. 1975)); see LaFave, supra, § 4.5, at 513 (stating that "the primary purpose of this limitation is to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate"). Accordingly, the issue we must next consider is whether the search warrant in the case under submission sufficiently described the premises so as to meet constitutional standards.

Because, as previously mentioned, we cannot consider the affidavit as part of the search warrant, we must now determine whether the language describing the property in the warrant as "premises occupied by **Stacy Mack** said premises being a **wood framed single story dwelling with green siding and black shingle roof in Ripley**, situated in Lauderdale County, Tennessee" is too

---

[3] We note here that this requirement is also mentioned in Rule 41(c) of the Tennessee Rules of Criminal Procedure. The rule states in part: "If the magistrate is satisfied that grounds for the application exists . . . [he] shall issue a warrant identifying the property and naming or describing the person or place to be searched."

ambiguous to pass constitutional muster. In support of the constitutionality of the warrant, the State contends that, while the language may not seem to "particularly describe" the property, any ambiguity is cured by the naming of Defendant Mack.

The Tennessee Supreme Court stated that, "We have held that the describing of the place to be searched by naming the occupant satisfies the [particularity] test." Hatchett v. State, 346 S.W.2d 258, 259 (Tenn. 1961); see Garrett v. State, 250 S.W.2d 43, 44 (Tenn. 1952) (holding that the description directing the officer to search the house of "J.F. Garrett on the Bells Road in Madison County" met the particularity requirement); Webb v. State, 121 S.W2d 550, 552 (Tenn. 1938) (holding that "the description in the warrant meets the requirements of the statute . . . [by stating] 'the dwelling house of said Joe Webb, on the Andersonville Pike, Knox County, Tennessee.'"); see also Feagins v. State, 596 S.W.2d 108, 111-12 (Tenn. Crim. App. 1979); State v. Nelson, No. 01C01-9505-CC-00127, 1996 WL 233987, at *2 (Tenn. Crim. App., at Nashville, May, 9, 1996), perm. app. denied (Oct. 28, 1996). In each of these cases, and the others cited by the State in the case presently before us, the name of the defendant was included in the search warrant, as well as the street upon which the premises to be searched was located. In all of the aforementioned cases, the defendant's residence was a rural one such that the defendant's residence was commonly known by his name. Similarly, in the search warrant in the case under submission, the Defendant is named, but the street address is not provided. However, the record does not suggest that the Defendant's residence was in a rural setting. Thus, identifying the place as the defendant's residence would not, by itself, be sufficient. See State v. Bostic, 898 S.W.2d 242, 246 (Tenn. Crim. App. 1994).

The State would have us apply the reasoning of Bostic, wherein we stated: "[t]he possibility of any ambiguity in the location of the defendant's residence which might have arisen in the execution of the warrant was negated by [the police officer's] actual knowledge that the property was located, in fact, as described in the warrant." Id. at 246. However, the warrant at issue in Bostic was not ambiguous because it lacked "a particular description" of the premises. Instead, the directions to the subject premises which were contained in the warrant were susceptible to more than one interpretation, thus creating an ambiguity. "Ambiguity" is a derivative of "ambiguous," which is defined as "open to or having several possible meanings or interpretations; equivocal." Webster's New Universal Unabridged Dictionary, 64 (1996).

We are not confronted herein with an ambiguous description, i.e., one that is susceptible to multiple interpretations, but rather the omission of important details in the description. We, therefore, do not rely on Bostic for authority under these facts. The prior knowledge of the executing officer would not avail to heal the infirmity caused by the omission. The requirement of particularity means that the description must "particularly point to a definitely ascertainable place so as to exclude all others, and enable[ ] the officer to locate the place to be searched with reasonable certainty without leaving it to his discretion." State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993).

Where, as in the instant case, the affidavit containing a sufficient street address appears on the same sheet of paper as the search warrant, but it is not incorporated, then inevitably criticism of "hypertechnicality," may arise. In the interest of the constitutional rights to be protected, we

conclude that inclusion of a "particular description" is a minimal requirement, as would be an incorporation by reference of the affidavit. While the executing officer's prior knowledge may be sufficient to cure some defects, there must be limitations to such curatives in order to protect from intrusions based on an overly extensive officer's discretionary power. We hold that adhering to particularity in description is a safeguard worthy of protection. Accordingly, we reverse the trial court's denial of the defendant's motion to suppress.

### B. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Although possession may be constructive in nature, it is essential that we determine whether the defendant had constructive possession of the cocaine found in Connelly's mouth. "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) quoting United States v. Craig, 522 F.2d 19 (6th Cir. 1975). "In essence, constructive possession is the ability to reduce an object to actual possession." State v. Williams, supra, quoting United States v. Martinez, 588 F.2d 495 (5th Cir. 1979). The mere presence, alone, of a person in an area where drugs are discovered is insufficient to support a finding

of possession by that person. <u>State v. Cooper</u>, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." <u>Id.</u>

With reference to Defendant Mack, there were no drugs or money found on her person. Her presence in the area where drugs were found will not suffice to prove her possession. However, the State presented evidence that Defendant Shaw had $395 in cash at the time he was searched and that the cocaine Connelly possessed had a value of approximately $380. A rational trier of fact could have inferred that Defendant Shaw had recently possessed the cocaine prior to selling it to Connelly. An equally rational trier of fact could have inferred that Defendant Shaw intended to buy the cocaine possessed by Connelly. In any event, in light of our finding that the evidence seized pursuant to the defective search warrant should have been suppressed, the money possessed by Defendant Shaw would be inadmissible "fruit" of the unconstitutional search. <u>See generally</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 484 (1963)

This being the only evidence even tenuously connecting Defendant Shaw to the cocaine possessed by Connelly, we are compelled to conclude that the evidence is insufficient to support the convictions of both Defendants Mack and Shaw. The convictions are reversed and dismissed.

 

 

_____
JOHN EVERETT WILLIAMS, JUDGE