UNITED STATES of America,
Plaintiff–Appellee,

v.

Willie WATKINS, Defendant–Appellant.

No. 97–6232.

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 11, 1998.

Decided June 10, 1999.

R. Michael Murphy (briefed), Office of the U.S. Attorney, London, KY, for Plaintiff–Appellee.

Fred F. White (briefed), London, KY, for Defendant–Appellant.

Before: BOGGS and MOORE, Circuit Judges; DOWD, District Judge.*

DOWD, District Judge, delivered the opinion of the court. BOGGS, J. (pp. 505–06), delivered a separate concurring opinion. MOORE, J. (pp. 506–07), delivered a separate opinion dissenting in part.

## OPINION

DOWD, District Judge.

The defendant-appellant Willie Watkins ("defendant") appeals his conviction on five drug counts and the resulting sentence of 210 months. On appeal, he challenges the district court's denial of his motion to suppress the fruits of a search that produced evidence of two of the offenses. He also challenges the district court's failure to depart downward from the sentencing guidelines based on diminished capacity, acceptance of responsibility, and sentencing entrapment. He challenges the district court's use of a 100–to–1 ratio (crack cocaine, compared to cocaine powder) for calculating the quantity of drugs for sentencing purposes. Finally, he claims that the district court gave an incorrect response to a question asked by the jury during deliberation.

## I.

Although several issues have been raised, the primary thrust of the appeal

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

focuses on the denial of defendant's motion to suppress both the cocaine powder and the crack cocaine seized during the execution of a search warrant. The affidavit for the issuance of the search warrant did not specifically identify the house where cocaine powder and crack cocaine were located and seized. The seizure in the unnamed house of 57.25 grams of crack cocaine and 54.42 grams of cocaine powder constituted the basis for Counts Nine and Ten in the superseding indictment, of which Watkins stands convicted. Watkins was also convicted of Count One (conspiracy to possess and distribute both cocaine powder and cocaine base), Count Two (possession of cocaine with intent to distribute), and Count Three (possession of cocaine base with intent to distribute).[1] The proof offered to support the convictions of Counts One, Two, and Three was based on the testimony of Tammy Mullins, a confidential informant who had bought cocaine powder and crack cocaine from Watkins prior to the challenged search of August 29, 1996. The purchases by Ms. Mullins prior to the search were described in the six-page affidavit submitted by FBI agent John Parrish in support of the application for the search warrant.

We first consider whether the motion to suppress the fruits of the search of the unnamed house should have been granted. Thereafter, we shall consider the remaining issues raised by defendant.

### A.

On August 29, 1996, FBI agents applied for a search warrant. The warrant identified a specific residence of one Keith Louis, in which defendant was living; however, it failed to identify the second, uninhabited, house on the Louis property where the cocaine powder and cocaine base forming the basis of two of defendant's convictions were eventually located

1. Counts One, Two, and Three were based on conduct that occurred over a period of time in August 1996 prior to the search.

and seized. The supporting six-page affidavit submitted by Agent John Parrish alleged in detail a number of instances of criminal drug-related activity that had occurred in the residence of defendant and Louis and some that had occurred away from the property altogether, all as observed by a confidential informant used in the investigation.[2] The affidavit contained no reports that the informant had observed any illegal activity on any part of the property other than inside the house in which defendant and Mr. Louis lived, nor did it contain any reports that the informant had any reason to believe that such activity had occurred on any other part of the property (with the exception of certain activity, like possession, necessarily occurring in a vehicle on the property or between the residence and driveway when defendant and/or Mr. Louis would leave or arrive at the residence). The affidavit concluded with a statement expressing Agent Parrish's "belie[f]":

> based on his experience with individuals that traffic in controlled substances that in the Louis residence, his private vehicles, garages, structures, barns, sheds, and any and all out buildings and appurtenances located on the property, being under the care ... and control of Keith Louis, is evidence of controlled substances, namely cocaine and crack cocaine and other evidence of Louis' and Walker's [sic] trafficking in cocaine, such as records reflecting sales and purchases of cocaine and other items used to possess, dispense and distribute a controlled substance, and proceeds from the sale of a controlled substance or substances.

Defendant argues that the district court incorrectly denied his motion to suppress the results of the search of the second house conducted on August 29, 1996. He argues that the search of the second house was unreasonable under the Fourth Amendment. First, he asserts, it was not listed in the search warrant as the place to be searched. The warrant specifically referred only to a "white two-story frame house with black shutters." Since there were no exigent circumstances, which the Government conceded, this made the search of the second house warrantless and, therefore, unreasonable.

Second, defendant argues that the search of the second house was not supported by probable cause because there was no connection made in either the warrant or affidavit between the second house and illegal activity. Third, the reference in the affidavit contained the boilerplate language, "garages, structures, barns, sheds, and any and all out buildings and appurtenances," which, if deemed to include the second house, failed to describe such house with sufficient particularity to satisfy constitutional standards, since the house at issue was "a separate dwelling."[3]

Finally, according to defendant, the good faith exception to the exclusionary rule does not apply here because neither the warrant nor the affidavit described the second house sufficiently and neither the warrant nor the affidavit mentioned any connection between the second house and illegal activity. Therefore, defendant asserts, "the Magistrate who issued the warrant can not be said to have considered the issue of probable cause as to those premises and the officers can not be said to have acted with objectively reasonable good faith."

The Government argues that the affidavit described the second house by referring to "structures ... and all outbuildings and appurtenances located on the property, being under the care and control of Keith Louis ..."; that the officers who

---

2. According to the affidavit, Ms. Tammy Mullins, the confidential informant who had bought cocaine powder and crack cocaine from defendant prior to August 29, 1996, had been equipped with a "body recorder."

3. Defendant refers to the second house as a "separate dwelling" despite its "almost uninhabitable condition" and the fact that no one was living there at the time of the search.

conducted the search were informed by Agent Parrish at a pre-search conference that both the main house and the second house were included in the premises to be searched, and were given a map showing both houses; and that the officers knew that Mr. Louis had an ownership interest in both houses.

The Government also argues that the good faith exception applies. It claims that officers' knowledge can cure insufficiencies in a warrant, and that they may rely on fellow officers for information. Since the officers here were told that the second house was to be searched under the warrant, they were given a map showing that house, and the supporting affidavit referred to outbuildings and other structures, their search of that house was "objectively reasonable."

"When reviewing decisions on motions to suppress, this court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo*." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir.1996) (citing *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993)).

"The standard of review for this Court in determining whether a search warrant describes the place to be searched with sufficient particularity is a *de novo* review." *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989). Whether the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies to a search is also reviewed *de novo*.

*United States v. Durk*, 149 F.3d 464, 465 (6th Cir.1998).

"The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement [of the Fourth Amendment] is whether 'the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended.'" *Gahagan*, 865 F.2d at 1496 (quoting *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925) and *United States v. Votteller*, 544 F.2d 1355, 1362 (6th Cir.1976)).

If a warrant fails to describe with sufficient particularity a place to be searched, a supporting affidavit incorporated into the warrant can cure the insufficiency if the affidavit describes the place with sufficient particularity. *Gahagan*, 865 F.2d at 1497. If the affidavit does not cure the warrant's insufficiency, the search may still be upheld under the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Id.* at 1496.[4]

If probable cause is found to be lacking in a search warrant, the good-faith exception will apply to uphold the search unless the evidence is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Brown*, 147 F.3d 477, 485 (6th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 270, 142 L.Ed.2d 223 (1998) (quoting *Leon*, 468 U.S. at 923, 104 S.Ct. 3405).

The warrant in this case failed to describe the second house at all.[5] The

---

4. The magistrate judge's report and recommendation, which was adopted by the district court, stated that this Court upheld a search in *Gahagan* based on the good-faith exception. In that case, however, this Court upheld the search on the grounds that the search warrant had incorporated the supporting affidavit, which had described with sufficient particularity the property to be searched; it expressly stated that it did not need, therefore, to reach the good-faith exception issue. *See Gahagan*, 865 F.2d at 1499.

5. In the warrant, the description of property to be searched was, in its entirety, as follows:
... the premises known as the residence of Keith Louis, beginning at the intersection of Ky Highway # 74 and 18th Street in the City of Middlesboro, Bell County, Kentucky, then travel south on 18th Street approximately 150 feet to the intersection of 18th Street and Queensbury Road, turn left onto Queensbury Road and travel approximately 300 feet to the second driveway on the left of Queensbury Road when traveling in a

affidavit, however, which included a statement that evidence of illegal drug activity was expected to be found in "the Louis residence, his private vehicles, garages, structures, barns, sheds, and any and all out buildings and appurtenances located on the property, being under the care and control of Keith Louis," did describe the second house with sufficient particularity so that "the officers with [the] search warrant [could] with reasonable effort ascertain and identify the place intended" to be searched. There was no "reasonable probability that another premises might be mistakenly searched." *Gahagan*, 865 F.2d at 1496 (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979)).

■ This Court concludes, however, that the district court's finding that the affidavit was incorporated into the warrant was erroneous. The only two references to the affidavit in the warrant were a statement that an affidavit had been "made before [the magistrate judge]," and that the magistrate judge was "satisfied that the affidavit ... establish[ed] probable cause to believe that [the items sought would be found on the ... premises above-described]." The premises "above-described" consisted only of the main house ("a white two story frame house with black shutters and being the residence of Keith Louis and being in Bell County, Kentucky"). The warrant contained no "words of reference" that can be said to have incorporated the affidavit into it. *See Gahagan*, 865 F.2d at 1497 (quoting *United States v. Klein*, 565 F.2d 183, 186 n. 3 (1st Cir.1977)).[6] *See also United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985);[7] *Matter of Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir.1981).[8]

The next question, then, is whether the good-faith exception of *Leon* can justify the upholding of this search. Defendant argues that, because neither the warrant nor the affidavit described the second house with sufficient particularity or connected it to illegal activity, the magistrate judge did not have enough evidence to determine probable cause and the officers could not have reasonably relied on the warrant in good faith. As concluded above, the second house was described with sufficient particularity in the affidavit. Defendant's argument that neither the affidavit nor the warrant did so, therefore, is without merit. It also seems fair to conclude that it was reasonable for the officers to believe that the warrant incorporated the affidavit, since the affidavit is mentioned (if not incorporated) twice on the face of the warrant.

---

southeasterly direction, turn into said driveway and travel approximately 150 feet to a white two story frame house with black shutters and being the residence of Keith Louis and being in Bell County, Kentucky, in the Eastern District of Kentucky....

6. This is why, contrary to the Government's argument, the upholding of the search in *Gahagan* does not automatically mean that the search in this case should be upheld. In *Gahagan*, which involved a search similar to the one in this case, the warrant was found to have incorporated the affidavit containing the description of the searched property; in this case, the conclusion is that the warrant failed to do so. The inquiry, therefore, must move on to the question of good faith, something *Gahagan* expressly declined to reach on its facts.

7. Relying on *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir.1976), which upheld a search when the warrant referred to the property to be seized "as described in the affidavit" and the affidavit itself "was readily available to all parties," *id.* at 1316, *Strand* invalidated the search at issue because the warrant stated "only that '[a]ffidavit(s) [have] been made' and that 'grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s).'" *Strand*, 761 F.2d at 453.

8. *Talk of the Town* upheld a search because the overly-general warrant authorized seizure of "property as described in the Affidavits" that was evidence of certain acts "described in the Affidavits," and the court found the affidavit's description to be sufficient.

Under these circumstances, the final question to be asked and answered is: Was the evidence presented to the magistrate judge "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable?" *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)); *Brown*, 147 F.3d at 485 (quoting *Leon*). The warrant expressly authorized a search of the main residence and included a description of property to be found during the search, including illegal drugs, records of the sale, possession, or distribution of drugs, and other evidence of the listed drug-related violations and illegal wiretap and electronic surveillance. The affidavit described several instances of criminal drug-related activity occurring in the residence of defendant and Keith Louis, and some occurring away from the property altogether. Nothing in the affidavit indicated that the informant had witnessed any illegal activity on any part of the property other than the house in which defendant and Mr. Louis lived or that the informant had any reason to suspect the same. In its conclusion, the affidavit contained a statement expressing Agent Parrish's belief that, based on his experience, evidence of the kinds of activity witnessed by the informant would be found in places other than where they had been witnessed.

■ The district court adopted the magistrate judge's apparent conclusion that the good-faith exception applied here, which conclusion was based, in part, on the fact that the executing officers were told by Agent Parrish during a pre-search conference that the warrant included the second house and were given maps showing the second house. This cannot be a reasonable basis for applying the good-faith exception. Allowing executing officers to search a property not described in a warrant and then to claim good faith based on what other officers incorrectly told them could invite officers acting unreasonably or in bad faith to tell "innocent" officers to wrongly search a property. There would never be any consequences as long as the reliance by the "innocent" officers was objectively reasonable. It would not be consistent with *Leon* to allow this kind of wrongful handling of search warrants.[9] The question at this point in the analysis, therefore, is whether Agent Parrish, as well as the other officers involved, could in reasonable good faith believe that there was probable cause to search the second house based on the warrant and the affidavit.[10]

**9.** .... It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *See Whiteley v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971).
*Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. 3405.

**10.** The affidavit did not accompany the officers to the search. In order to even consider whether the affidavit could have been relied on in good faith by the searching officers, this Court must first establish their awareness of its contents at the time of the search. It can be presumed that Agent Parrish was familiar with the statements in his own affidavit. It is important, however, to be certain that he himself was involved in the actual search and/or that he either showed the affidavit to other searching officers or told them that the second house was to be included in the execution of the search warrant. The transcript of the suppression hearing contains precious little detailed factual background concerning the way in which the search was prepared and conducted. However, the transcript does contain what appears to be a stipulation by defendant that, indeed, the officers who conducted the search understood from statements by Agent Parrish at a pre-search conference that they were authorized to search the second house. Furthermore, Agent Parrish himself was part of the team who performed the search, as evidenced by the Receipt of Property Seized. The receipt indicates that certain listed items were discovered by Agent Parrish during the search.

■ From this perspective, was the affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable?" In several circuit cases involving circumstances somewhat similar to the ones present here, search warrants were found either to have constituted probable cause or to have survived the *Leon* test. First, in a case recently decided by this Court, police in Tennessee, who had been investigating the defendant, learned that he had been arrested in another state for buying cars with counterfeit cashier's checks. *See United States v. Van Shutters*, 163 F.3d 331 (6th Cir.1998). They obtained a warrant to search a residence in Tennessee believed to be occupied by the defendant and found numerous incriminating items during the search. Although the warrant and supporting affidavit described the premises to be searched with particularity, identified the items to be seized in detail, and recounted the counterfeiting scheme in which the defendant had been engaged, the affidavit "completely neglect[ed] to indicate why the affiant believed that [the defendant] himself had any connection with the Tennessee Residence." *Id.* at 336. The defendant argued that the failure to establish a nexus between the Tennessee residence and the evidence being sought rendered probable cause lacking and the warrant invalid. This Court held that, even if the warrant was invalid, the search would be upheld based on *Leon*'s good faith exception, noting that the affidavit stated that the affiant had personal knowledge that the defendant had been involved in ongoing criminal activities, described those activities and the items used to facilitate them, and stated that the affiant had significant experience in law enforcement. *Id.* at 337–38. This Court concluded that "only a police officer with extraordinary legal training would have detected any deficiencies in that document." *Id.* at 337.

This Court also decided *United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994), a case in which the defendant argued that a search of his bank safety-deposit boxes had not been supported by probable cause. The officer applying for a warrant to search the boxes had been told by other persons arrested for drug offenses that the defendant was a local drug supplier. A credit check of the defendant had revealed that he maintained safe deposit boxes at a bank. Further investigation showed telephone contact between the defendant and Florida and Jamaica, and also showed that a telephone number allegedly given by the defendant to a person he allegedly supplied was registered to someone in whose car the defendant had once been issued a traffic citation.

This Court noted that the officer "had not made any material connection between the bank and any criminal activity." *Id.* at 1097. The affidavit supporting the warrant had contained the following statement: "Based on his training and experience, [the officer] believed ... that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes." *Id.* This Court held that such "training and experience" as noted in the affidavit, while it may be considered in determining probable cause, "cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity," and that the officer "did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the [safe deposit box] warrant should not have been issued." *Id.* at 1097–98. This Court did find, however, that the search was valid under *Leon:*

> There is no evidence that [the officer] gave a knowingly false affidavit or otherwise acted in bad faith. The warrant was issued by a proper authority, and there is no evidence that the issuing magistrate had abandoned his neutral judicial role. [Defendant] is correct that a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" may

be suppressed even when, as here, the warrant is facially valid and there is no evidence of bad faith of a biased magistrate.... But we cannot say that this warrant was "so lacking." As previously discussed, [the officer] certainly had probable cause to believe that [the defendant] had committed a crime. Moreover, although we have held that his "training and experience" were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the "so lacking" hurdle.

*Id.* at 1098 (citation omitted).

In another Sixth Circuit case, *United States v. Richardson,* No. 94–6016, 1995 WL 408065 (6th Cir.1995) (unpublished), this Court again upheld a search based on *Leon* despite its conclusion that probable cause had been lacking because there had not been a sufficient nexus established between the defendant's residence and evidence sought. After a search of a trailer owned by the defendant had produced evidence of a large marijuana-growing operation, a special agent obtained a warrant to search the defendant's residence for additional evidence expected but not found in the trailer. The application for the warrant, however, did not state that the residence should be searched because of missing evidence in the trailer, nor did it give any other reason for that search. This Court held that the evidence was admissible because, as it was reasonable for the agent to seek a warrant to search the residence and the agent seeking the warrant had probable cause to believe the defendant had committed a crime, the nexus between the residence and the evidence sought "was not 'so remote as to trip on the "so lacking [in indicia of probable cause as to render official belief in its existence entirely unreasonable]" hurdle.' " *Id.* at *3 (quoting *Schultz,* 14 F.3d at 1098) (brackets in original).

A case from the Seventh Circuit involved a search of a house based on an officer's having seen marijuana plants growing in the back yard of the house. In *United States v. Malin,* 908 F.2d 163 (7th Cir.), *cert. denied,* 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990), an officer identified marijuana plants on a property from his vantage point on a neighboring property and applied for a warrant to search the house. Although his "complaint did not directly link the marijuana to the house," the Seventh Circuit concluded that the search was valid, holding that "[d]irect evidence ... is not necessary to a probable cause determination." *Id.* at 165. That court stated that an issuing magistrate judge need only "conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit," and that he or she is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Id.* at 166 (quotation marks and quotations omitted). Under the facts of that case, the court concluded that "[the officer's] observation of marijuana growing in [the defendant's] yard reasonably yielded the conclusion that marijuana or other evidence of marijuana possession would be found in [the defendant's] house." *Id.* The court also concluded that, even if it had found probable cause to be lacking, the search would be valid under *Leon* because a reasonably well-trained officer would not have known that the search was illegal. *Id.* at 166–67.

Finally, in *United States v. Alexander,* 761 F.2d 1294 (9th Cir.1985), the Ninth Circuit upheld a search of an entire ranch along with all structures on the ranch despite the lack of evidence linking any specific buildings to illegal activity. Evidence supporting the warrant included the transportation onto the ranch of chemicals used to make cocaine; delivery to the ranch of equipment of a type used to make cocaine; persons involved in these deliveries who had previously engaged in cocaine trafficking; and information from reliable informants that a cocaine factory was being

constructed on the ranch. The warrant that was issued listed several specific structures and vehicles on the ranch to be searched, and also "commanded the officers to search 'all buildings, outbuildings, garages, yard areas, trash containers, storage areas and containers used in connection with or within the curtilage of said premises and buildings.'" *Id.* at 1300.

The court upheld the search, in part because the defendant "owned the entire ranch, and it was under his admitted control." *Id.* at 1301. In addition, the court pointed out, "[t]he contraband was of a type that could be hidden easily in any structure," and "[t]he most reasonable place to look for contraband on rural, undeveloped acreage is in the structures on that acreage." *Id.* Therefore, a "warrant authorizing the search of any building, particularly temporary structures within which the contraband could be easily hidden, was reasonable under the circumstances ..." *Id.*

In this case, as in *Van Shutters, Schultz,* and *Richardson,* there is no evidence that Agent Parrish gave a knowingly false affidavit or otherwise acted in bad faith; the warrant was issued by a proper authority; there is no evidence that the issuing magistrate judge had abandoned his neutral judicial role; and Agent Parrish had probable cause to believe that defendant had committed a crime. *See Schultz,* 14 F.3d at 1098; *Van Shutters,* 163 F.3d at 337; *Richardson,* 1995 WL 408065 at *3.

As in *Malin,* a reasonably well-trained officer executing the search at issue here would not have known that this search was illegal. We could not expect an officer to determine that a magistrate judge could not lawfully conclude that it would be reasonable to seek the drug evidence in the second house, especially in light of the nature of the evidence (illegal drugs) and the type of offenses (possession and distribution). *See Malin,* 908 F.2d at 166.

Finally, reminiscent of *Alexander,* the officers executing the warrant knew that Mr. Louis was the owner of the second house. Furthermore, illegal drugs might be easily moved to and hidden in an unoccupied house owned by a defendant and located next to his residence. *See Alexander,* 761 F.2d at 1301.[11]

Consequently, this Court concludes that, although the search warrant itself did not describe the second house with particularity or contain probable cause to search the second house, and although the affidavit was not properly incorporated into the warrant and did not, at any rate, contain probable cause to search the second house, the evidence seized during the search was nevertheless admissible pursuant to the good-faith exception in *Leon.* A reasonably well-trained officer could have concluded that probable cause existed to search the second house, given all the evidence in the affidavit of illegal drug activity occurring in the residence and Agent Parrish's statement that his training and experience led him to believe that evidence of such activity would likely be found in other structures on the property that were also under the control of Mr. Louis. Under the facts of this case, we conclude that the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Therefore, we find no merit in defendant's first

11. *See also United States v. Savoca,* 761 F.2d 292 (6th Cir.), *cert. denied,* 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985), a case in which a motel room in Phoenix, Arizona, was searched pursuant to a warrant after the defendant and another man, both known to have been involved in several bank robberies in Ohio, were seen in the room. Despite this Court's holding that probable cause was lacking because the affidavit failed to describe the relationship of the men with the motel room and failed to specify how recently the robberies had occurred, it held that *Leon* rendered the evidence admissible because a reasonably well-trained officer could conclude that, based on the type of evidence that would be sought (money and perhaps instrumentalities of bank robbery), the defendant would probably keep such evidence within his close control. *Id.* at 297–98 & n. 9.

issue.[12]

## B.

The second issue raised by defendant is that the district court incorrectly failed to depart downward from the sentencing guidelines in sentencing defendant on grounds of diminished capacity. He argues that a sentencing court may depart from the sentencing guidelines under Section 5K2.13 if a defendant committed a non-violent crime while suffering from a significantly reduced mental capacity that contributed to the commission of the offense, so long as his criminal history does not contraindicate such a reduction. Defendant claims that he did suffer from such a reduced mental capacity, as evidenced by testimony of his aunt at the re-arraignment; a forensic report by the Federal Medical Center at Lexington, Kentucky; and trial testimony that "would reflect that [defendant] suffered from a diminished capacity."

The government argues that, although defendant apparently suffered from a depressive disorder (as indicated in the Forensic Medical Center report), that would not qualify him for a downward adjustment in the sentence based on diminished capacity; nor is it clear that his disorder was not caused by his voluntary use of drugs—which would disqualify it as a basis for a downward adjustment. The govern-

ment points out that the district court noted this last point expressly.

Findings of fact by the district court are to be accepted unless clearly erroneous. *United States v. Weaver,* 99 F.3d 1372, 1376 (6th Cir.1996) (citing *United States v. Leake,* 998 F.2d 1359, 1362 (6th Cir.1993)).

> Where ... the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines, the failure to depart is not cognizable on appeal under 18 U.S.C. § 3742(a).

*United States v. Davis,* 919 F.2d 1181, 1187 (6th Cir.1990).

Defendant does not point to any trial testimony in particular that allegedly reflected his alleged diminished capacity. He also fails to explain how his mental incapacity is demonstrated by the aunt's testimony or the forensic report. He does not even describe any conditions or problems that would constitute his alleged reduced mental capacity. Defendant bears the burden of demonstrating on appeal that error occurred in the district court and that he was prejudiced thereby. It is, therefore, his duty to point to the parts of the record that support his position and also to present arguments in sufficient de-

---

**12.** The Presentence Report calculated the total offense level to be 34, beginning with a base offense level of 32 plus two additional levels because a loaded firearm was retrieved from the residence of defendant. The criminal history category was calculated to be III with a resulting sentencing range of 188 to 235 months. As noted above, defendant was sentenced to a term of 210 months.

The base offense level of 32 followed defendant's five convictions, and was based on a marijuana equivalency of 1819.60 kilograms after a conversion of the 85.965 grams of cocaine to 17.2 kilograms and a conversion of 90.12 grams of cocaine base (crack) to 1802.40 kilograms. If the 54.42 grams of cocaine and the 57.25 grams of cocaine base found in the challenged search of the second

house were not counted in determining the base offense level, the remaining equivalency of 663.74 kilograms would result in a lower base offense level of 28. However, *United States v. Jenkins,* 4 F.3d 1338, 1344–45 (6th Cir.1993), *cert. denied,* 511 U.S. 1034, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994), provides that suppressed evidence may be considered as relevant conduct in determining the base offense level, providing the suppressed evidence flows from the same course of conduct or common plan or scheme. *See United States v. Hill,* 79 F.3d 1477, 1481 & n. 1 (6th Cir.), *cert. denied,* 519 U.S. 858, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996). Consequently, even if the motion to suppress had been granted, it appears that the base offense level would have remained at 32.

tail to show how they support his position. References to the trial transcript as a whole, or to certain documents or testimony, without explaining which words or parts support defendant's position or how they support it, do not fulfill this duty. This Court should not be expected to make defendant's arguments for him.

The district court made the following statements at the sentencing hearing:

> Section 5K2.13 of the guidelines requires that the Court find that the defendant committed a nonviolent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, and then to fashion a sentence that would reflect the extent to which that reduced mental capacity contributed to the commission of the offense.
>
> First of all, I note and do not doubt that this defendant's mother's death in November of 1995 was a situation that involved much despair and anguish and anxiety and very negative emotions. But there are a lot of people who suffer horrible things, Mr. Watkins, every day and don't resort to selling drugs, especially well over a year later.
>
> So I don't think I can find that there was significantly reduced mental capacity. I know he was depressed. I don't doubt that.
>
> I would also note with regard to the second prong of that section of the guidlines [sic], that it has to not have resulted from the voluntary use of drugs or other intoxicants. And paragraph 78 shows that there was drug use at the time of the mother's death and from then on until the date of the arrest. I, in the face of that, can't really find that any of this may not have resulted from voluntary use of drugs.

So I'm denying that motion for downward departure.

The district court found insufficient evidence of diminished capacity and declined to find its existence. Defendant states his belief that certain evidence showed that he suffered from diminished capacity, but fails to point to specific evidence or provide any argument or explanation that would support a conclusion that the district court's finding was clearly erroneous.[13]

 Even if the finding were clearly erroneous, the district court's failure to depart downward still would not be appealable. As pointed out above, as long as the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines, the failure to depart is not cognizable on appeal. 18 U.S.C. § 3742(a); *Davis*, 919 F.2d at 1187. No argument has been made that the district court incorrectly computed the sentence or incorrectly applied the guidelines, and the district court was aware of its discretion to depart downward on grounds of diminished capacity. Defendant cannot prevail on this issue.

### C.

 The third issue raised by defendant is that the district court incorrectly failed to depart downward from the sentencing guidelines in sentencing him on grounds that he had accepted responsibility for the crimes. His entire argument is the following:

> The [district court] failed to give [defendant] credit for adjustment for acceptance of responsibility. [Defendant] did

---

13. The only specific part of the record that defendant points to in support of his position is the forensic medical report, which listed several diagnoses and found him mentally competent to stand trial. Even if the diagnoses in the report of depression and "depen- dant personality disorder" were accepted as true, a finding would still have to be made that one or both conditions contributed to the commission of the offenses—a finding that is not justified based on the forensic report alone.

not deny and, in fact, testified at trial that he did commit the crime for which he was charged. Also, when questioned by the U.S. Probation Officer, [defendant] did not deny that he committed the crime of which he was convicted. [Defendant] testified at the sentencing hearing that he did possess and [sell] drugs. Therefore, the offense level should be decreased by two levels.

The Government argues that the district court committed no error here because defendant made various statements inconsistent with willingness to take full responsibility for his actions, statements that tended to downplay his role in the offenses and place the blame on others. In particular, the government points to the following statements by defendant at the sentencing hearing:

But this was not my idea nor my intention. As you read on you clearly see who was the mastermind behind this whole operation.

. . . I am not a drug dealer nor have I ever been a drug dealer. . . . I only gained the necessities to survive.

An offense level is to be decreased by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. A district court's determination of whether a defendant has accepted responsibility such that a reduced sentence is justified is reviewed for clear error. *United States v. Bonds,* 48 F.3d 184, 187 (6th Cir.1995); *United States v. Greene,* 71 F.3d 232, 234 (6th Cir.1995). A district court's finding that a defendant has failed to make the requisite demonstration is not clearly erroneous if it finds that the defendant has demonstrated only a "very limited acceptance" of responsibility. See *Bonds,* 48 F.3d at 189.

"A defendant who . . . frivolously contests relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. . . ." USSG § 3E1.1, comment. (n.1(a)).

The downward departure is not intended to apply to a defendant who goes to trial denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. If a defendant goes to trial for reasons not involving factual guilt, an adjustment may be made, but will be based primarily on pre-trial statements and conduct. *See* USSG § 3E1.1, comment. (n.2).

At the sentencing hearing, defendant made the following statements:

As you read my PSI report you—you do see I have some involvement with the acts committed. I don't deny that. But this was not my idea nor my intentions. As you read on you clearly see who was the mastermind behind this whole operation. . . . I am not a drug dealer nor have I ever been a drug dealer.

The district court found that defendant had not taken full responsibility for his offenses:

With regard to acceptance of responsibility, I will decline to accept the United States' invitation, really, to reduce by two levels.

And, Mr. Watkins, I want to explain to you why I'm doing that. Because you are still not taking responsibility for your own actions. Today you said, and I quote, I am not a drug dealer, nor have I ever been a drug dealer.

Mr. Watkins, if you are selling drugs, you are a drug dealer.

Based on the above statements and the relevant law (not to mention the fact that defendant pointed to no pre-trial statements or conduct to support his position), this Court concludes that the district court's finding that defendant had not demonstrated his acceptance of responsibility was not clearly erroneous and, therefore, the failure to depart downward for acceptance of responsibility was not error.

**D.**

The next issue raised by defendant is that the district court should have

departed downward from the sentencing guidelines pursuant to 18 U.S.C. § 3553(b) due to sentencing entrapment. In support, he cites *U.S. v. Barth,* 990 F.2d 422 (8th Cir.1993). According to defendant:

> The officers waited to arrest [defendant] in this matter until after sufficient sales had been made to meet threshold amounts so as to put in place mandatory minimums. Prior to the sales of August 15, 1996, officers had sufficient evidence to prosecute [defendant and his co-defendant]. It was improper for the officers to wait until the 15th day of August, 1996 to arrest [defendant].

The Government argues that *Barth* involved "outrageous official conduct which overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant," and that the standard operating procedure by which officers arrange drug buys does not qualify as "outrageous behavior." As in *United States v. Jones,* 102 F.3d 804, 809 (6th Cir.1996), the Government asserts, the district court made a finding that there was insufficient evidence of sentencing entrapment (stating that making more than one buy from a drug dealer was nothing out of the ordinary in a routine drug case· and that the jury had rejected any claim of entrapment). According to the Government, this renders the district court's failure to depart downward on that basis unappealable, since such a finding was an implicit acknowledgment by the district court that it was aware that it had discretion to depart downward.

> A district court's failure to depart from the Guidelines range is not cognizable on appeal under 18 U.S.C. § 3742(a) when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from an incorrect application of the Guidelines range, and is not unaware that it had

discretion to depart from the Guidelines range.

*United States v. Jennings,* 83 F.3d 145, 152–153 (6th Cir.), *amended,* 96 F.3d 799 (6th Cir.), *cert. denied sub nom. Stepp v. United States,* 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996). *See also Jones,* 102 F.3d at 809. A district court's failure to depart downward on the basis of sentencing entrapment due to its finding that facts in the record militate against a downward departure is, therefore, unappealable. *Jennings,* 83 F.3d at 153; *Jones,* 102 F.3d at 809.[14]

Here, as in *Jennings* and *Jones,* the district court "found facts in the record that militated against a downward departure" on grounds of sentencing entrapment:

> With regard to sentencing entrapment, I see nothing—I have heard nothing here this morning that would make me believe that I could find by a preponderance of the evidence that there was sentencing entrapment. You are entirely correct, Mr. White, that after just one instance of selling drugs, Mr. Watkins could have been arrested. But we deal every day with cases in which there is more than one instance of drug dealing. And just because there are several instances here does not lead me to believe I should sustain your objection and find sentencing entrapment. I just simply don't have enough to do that. And as Mr. Murphy noted, the jury did not go along with your defense of entrapment. And I recognize that is a separate issue. But what I have been given today does not—that in the face of the jury's rejection, really, of that defense, does not give me any reason to find by a preponderance of the evidence that there is sentencing entrapment.

The alleged error is unappealable. Therefore, the fourth issue raised by defendant has no merit.

---

14. We note that this court has yet to acknowledge that sentencing entrapment, even if proven, constitutes a valid basis for a downward departure. *See Jones,* 102 F.3d at 809.

#### E.

■ Next, defendant argues that the district court incorrectly calculated the quantity of illegal drugs involved using a 100–to–1 ratio for the cocaine base. His entire argument for this issue is as follows:

> [Defendant] objects to the calculations of the drug quantity in which cocaine base is calculated at a value 100 times greater than the value of cocaine. This calculation places a disproportionate value on cocaine base compared to cocaine.

The Government argues that there is no merit to defendant's argument, based on Sixth Circuit precedent that it cites.

The standard of review is *de novo* with respect to this issue because it concerns correct application of the sentencing guidelines, which is a legal conclusion. *See United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir.1996) (citing *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993)).

> This Court has held repeatedly that objections to the Sentencing Guidelines' disparate punishments for crimes involving crack cocaine and cocaine powder are meritless and the disparity is insufficient grounds for downward departure from guideline sentences. *See United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir.1993), *cert. denied*, 513 U.S. 883, 115 S.Ct. 219, 130 L.Ed.2d 147 (1994); *United States v. Tinker*, 985 F.2d 241, 242 (6th Cir.1992), *cert. denied*, 507 U.S. 1040, 113 S.Ct. 1872, 123 L.Ed.2d 491 (1993); *United States v. Pickett*, 941 F.2d 411, 418–19 (6th Cir.1991).

*United States v. Welch*, 97 F.3d 142, 154 (6th Cir.1996), *cert. denied*, 519 U.S. 1134, 117 S.Ct. 999, 136 L.Ed.2d 879 (1997).

Defendant essentially challenges the disparate treatment of cocaine versus cocaine base in quantity calculations for sentencing purposes. He offers, however, no reason to conclude that such disparate treatment of these substances is inappropriate, and cites no authority to support his position. Furthermore, as noted above, this Court has previously addressed this issue and held that such a challenge is without merit. *Id.*

#### F.

■ Finally, defendant asserts that the district court's response to a question asked by the jury was erroneous, that is, that it was not as appropriate as a different answer would have been. The jury asked, "If the vote is for entrapment, are the other counts thrown out or do we have to vote on the individual counts also?" The district court answered, "You must consider all of the instructions as a whole. Entrapment as defined in instruction number 10 must be considered as to each count. Each count must be considered individually."

Defendant's argument consists of the following statement:

> It would have been more appropriate for the instruction to read that entrapment must be considered as to each count and that if entrapment is found in any count, a not guilty verdict must be returned for that count. If entrapment is not found for any count, a guilty verdict should be returned for that count.

The Government argues that the district court's response was not an abuse of discretion because the response directly addressed the jury's question; it was a correct statement of the law; and defendant's suggested alternative response is virtually the same as the actual response given.

■ The standard of review is abuse of discretion with respect to this issue because it concerns a response to a jury question. *United States v. August*, 984 F.2d 705, 712 (6th Cir.1992), *cert. denied*, 510 U.S. 854, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993).

■ First, defendant has not provided this Court with any reason in his brief as to why or how the district court's response to the jury question was erroneous. He makes only the bald statement that another response "would have been

more appropriate" and cites no authority. Even assuming that another response would have been more appropriate, that alone does not render the court's actual response inappropriate, much less erroneous. Defendant was entitled only to a fair trial, not a perfect one. This, by itself, is sufficient grounds for rejecting defendant's argument on this issue.

Second, defendant's objection in the trial court was even less detailed than his challenge on appeal. In fact, when he objected at trial, he failed to make any suggestion as to how the district court should respond differently than it did:

> [DEFENSE]: I would—I would object. I don't believe that clarifies the question that they asked, Your Honor.
>
> THE COURT: What would be your suggestion to clarify it?
>
> [DEFENSE]: That entrapment as a defense, that defense must be considered to each—each count. I—
>
> THE COURT: I guess I can't understand why that's not what I'm saying.
>
> [DEFENSE]: Well, I—I mean I—maybe it's a matter of semantics. I still think the way that's written, they are going to come back and rule as to entrapment separate and then come back and rule on the counts. I mean I don't think they're—I don't think that simplifies whether—if they find the entrapment, find it as to each count, they are going to do the counts—
>
> I'm having a hard time verbalizing it myself.
>
> THE COURT: I believe I will have this typed and sent back.
>
> [DEFENSE]: All right. Thank you, your Honor.

Defendant did not suggest to the district court that the response to the jury's question should have included statements about whether a guilty verdict should or should not be returned depending on the finding on the entrapment issue. Generally, this Court will not consider arguments newly made on appeal unless the alleged error rises to the level of plain error. *See United States v. Ovalle,* 136 F.3d 1092, 1108 n. 17 (6th Cir.1998); Rule 52(b) of the Federal Rules of Criminal Procedure.

There is nothing in the record or the briefs to suggest that the district court plainly erred in its response to the jury. There is not even a suggestion that the response did not address the jury's question or state the law correctly. This final issue lacks merit.

## II.

For the reasons stated above, all of defendant's arguments on appeal are rejected. Defendant's convictions and sentence are AFFIRMED.

### CONCURRENCE

BOGGS, Circuit Judge, concurring.

I fully concur in Judge Dowd's analysis of the *Leon* good-faith exception, and I write only to clarify my additional analysis of one or two points. First, recent cases in this circuit and elsewhere clearly hold that a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage. This has included garages and other structures as far as 100 yards from the main residence, without any additional requirement of either probable cause as to the specific building, or specific identification of the building. *See, e.g., United States v. Bennett,* 170 F.3d 632, 639 (6th Cir.1999); *Arnett v. State,* 532 So.2d 1003, 1006, 1008–09 (Miss.1988); *McGlothlin v. State,* 705 S.W.2d 851, 857 (Tex.Ct. App.1986), *reversed on other grounds,* 749 S.W.2d 856 (Tex.Crim.App.1988); *see also United States v. Dunn,* 480 U.S. 294, 313–14, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (Brennan, J., dissenting) (collecting cases).

In this case, the structure in which the cocaine was actually found (charitably called a house in the magistrate judge's

report, adopted by the court), was only 50–60 feet from the main structure on a common driveway. Transcript of Preliminary Hearing of Sept. 4, 1996, p. 21. The parties agreed that it had not been occupied for some months, J.A. at 173, and was dilapidated and almost uninhabitable, J.A. at 170. It was not divided by any fence, residential dividing line or other device that would take it out of the normal designation of curtilage.

Second, I see nothing wrong with use of "boiler plate" language with respect to certain portions of the affidavit. The dissent in this case exemplifies a trend in some writings (*see, e.g., United States v. Allen,* 168 F.3d 293, 302–03 (6th Cir.1999), *petition for rehearing en banc filed,* Apr. 15, 1999) to disparage any search warrant or affidavit that contains particular "form" language. However, the crucial fact should not be the language used, but the particularity of the underlying information as expressed in the affidavit and warrant. Here, the attesting officer indicated that he had received information from a specific reliable informant with respect to a particular residence. As indicated above, the weight of authority is clear that when searching for small portable items such as drugs and records, there is no need to provide separate probable cause or identification of auxiliary structures in the vicinity of the named residence. That is all that happened here. I sincerely doubt that this case would have been as controversial, had it been a search of a toolshed 40 feet from the residence or a dilapidated garage 100 feet from the residence. Here, the fact that it was a dilapidated structure that had been. *previously* been used a residence should not cause a different result.

### DISSENTING IN PART

MOORE, Circuit Judge, dissenting in part.

Because I believe that the search warrant in this case was "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid" as to the dilapidated residence, I respectfully dissent from part I.A. of the majority opinion. *United. States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

The majority upholds the search despite the fact that, in its own words, "the search warrant itself did not describe the second house with particularity or contain probable cause to search the second house, and . . . the affidavit was not properly incorporated into the warrant and did not, at any rate, contain probable cause to search the second house." *Ante* at 499. In addition, the majority opinion acknowledges that the affidavit did not accompany the officers executing the search warrant, and that knowledge which is passed from the officer-affiant to other officers executing the warrant cannot be the basis for forming the "good faith" required by *Leon.* Given all of these facts and circumstances, I cannot agree with the court's conclusion that a reasonably well-trained officer could have concluded that he had probable cause to search the second residence.

The majority gives too much meaning to the boilerplate language of the affidavit. A second residence that was inhabited as late as three months prior to the search is not particularly described by the words "private vehicles, garages, structures, barns, sheds, and any and all out buildings and appurtenances located on the property." Moreover, this affidavit was not attached to the warrant, was not incorporated by reference in the warrant, and was not even in the possession of the executing officers. The lengthy affidavit described much of the drug activity as observed by a confidential informant, but never mentioned a second house at all or suspicions of drug activity on other parts of the property. The defendants were both in custody at the time of the search, so exigent circumstances were not present. There was simply no connection between the warrant—or even the absent affidavit—and the second house on the property

owned by Keith Louis, and no reason for the officers to search it without a valid warrant.

Other than the boilerplate language, the government offers three reasons for application of the *Leon* good-faith exception: the executing officers were told by Agent Parrish that the second house was within the scope of the search, they were given a map which identified both buildings, and they knew that Louis owned both houses. I agree with the majority that one officer telling other officers that the house is covered by the warrant cannot insulate the government from the requirements of the Fourth Amendment. The map, the government conceded, was prepared for another case and had nothing to do with these two defendants. J.A. at 169 (Tr. Suppression Hr'g at 4). Simple knowledge that Louis, a co-defendant, owned both properties cannot cure this facially defective warrant—permitting search of anything owned by the suspect would be much more akin to the "general warrants" of old than to the particularized requirements set down by the drafters of the Fourth Amendment.

The majority's outcome does not follow from the case law on which it relies. In none of the cases cited by the majority did the warrant (or the incorporated affidavit) fail to "particularly describ[e] the place to be searched and the persons or things to be seized." U.S. CONST. amend IV. What was missing in each case was compelling evidence of some other nexus—that between the place and the defendant, as in *United States v. Van Shutters,* 163 F.3d 331 (6th Cir.1998), or that between the place and the criminal activity, as in *United States v. Schultz,* 14 F.3d 1093 (6th Cir.1994), *United States v. Malin,* 908 F.2d 163 (7th Cir.), *cert. denied,* 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990), and *United States v. Richardson,* No. 94–6016, 1995 WL 408065 (6th Cir.1995). In those cases, the courts concluded that it was reasonable for the officers, based on

the nature of the criminal activity, to draw inferences concerning the reasons for the search of the particular place. The problem here is that the particular place searched—the second residence—is not specified in the warrant or inferable from the affidavit. There was no objective reason for the officers to believe they had the right to search it.

Although there is no evidence that Parrish made a knowingly false affidavit or that the magistrate judge abandoned his neutral role, this search fails on the last prong of *Leon:* the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid" as to the second residence, which is not mentioned even in the otherwise fairly detailed supporting affidavit. For these reasons, I dissent from Part I.A.