**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Fadi CHEHADE; Robert Salim Chehade, Defendants– Appellants.**

No. 99–3933, 99–3972.

United States Court of Appeals, Sixth Circuit.

April 5, 2001.

Before KENNEDY and SURHEINRICH, Circuit Judges; GAUGHAN,* District Judge.

KENNEDY, Circuit Judge.

Defendants Robert Chehade and Fadi Chehade were convicted and sentenced un-

---

* The Honorable Patricia A. Gaughan, United States District Judge for the Northern District of Ohio, sitting by designation.

der the Sentencing Guidelines for their roles in the sale of heroin to an undercover agent. They each appeal the district court's failure to depart downward from the sentences calculated under the Sentencing Guidelines. Defendants claim that the district court had discretion to depart downward based on a combination of cultural indoctrination, family ties and the aberrant nature of defendants' conduct but that the court did not fully recognize its discretion. For the reasons stated below, we hold that the district court correctly acknowledged its discretion and chose not to exercise that discretion. Defendants' claims are, therefore, not reviewable by this court and are dismissed.

## I.

Defendants Robert Chehade (Robert) and Fadi Chehade (Fadi) are brothers and are nephews of co-defendant Rony Jamil Lahoud. All three men are originally from Lebanon. In April 1998, the DEA began investigating Lahoud, who was living with the Chehades in Philadelphia, Pennsylvania. A DEA agent established contact with Lahoud and subsequently negotiated for the purchase of heroin. After lengthy negotiations, Lahoud agreed to import one kilogram of heroin and deliver the heroin to the undercover agent in Dayton, Ohio in exchange for $120,000. Lahoud returned to Philadelphia and he and the agent continued to make arrangements by phone. Robert acted as an interpreter for Lahoud during several phone conversations with the agent in which arrangements were made for the drug sale. On June 10, the agent met with Lahoud and Fadi, who was interpreting for Lahoud, in Dayton, Ohio. At that time, Lahoud and Fadi provided the agent with a sample (.74 grams) of heroin, and the parties discussed the purchase of 500 grams of heroin for $60,000. On June 11, 1998, Lahoud and Fadi again met with the agent at which time Lahoud

sold the agent 219.1 grams of heroin. Lahoud sold the agent a total of 219.84 grams of heroin.

Upon completion of the heroin sale, Lahoud and Fadi were arrested. Subsequent to the arrest, agents learned that Lahoud received partial financial backing from the Chehade brothers. According to the Presentence Report, Fadi revealed that he and his brother provided Lahoud with a total of $33,000 to purchase heroin for resale. In exchange, each expected to receive a profit of $5000 in addition to recouping money which the brothers lent to Lahoud for a previous business venture.

On June 17, 1998, Lahoud, Robert and Fadi were indicted. Count one of the indictment charged all three defendants with conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846. Count two charged Lahoud and Fadi with interstate travel in the commission of an unlawful activity, in violation of 18 U.S.C. § 1952. Count three charged Lahoud and Fadi with distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

On July 17, 1998, pursuant to a plea agreement, Fadi entered a guilty plea to count two in exchange for the government's agreement to dismiss the remaining counts in the indictment against him. On September 3, 1998, a one count information was filed charging Robert with use of a communications facility to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b). On the same day, pursuant to a plea agreement, Robert pled guilty to the one count information, in exchange for the government's agreement to dismiss the original indictment.

Sentencing for defendants Robert and Fadi was held on July 14, 1999. Beginning with an offense level of 28, calculated based on the 500 grams of heroin negotiat-

ed for by the parties, defendants were granted a two level reduction under the U.S.S.G. § 5C.1 safety valve and a three level reduction for acceptance of responsibility under § 3E1.1. Based on a motion for downward departure for substantial assistance pursuant to § 5K1.1 and 18 U.S.C. § 3553, the court granted another reduction, resulting in a range of 21 to 27 months. Both defendants requested an additional downward sentencing departure based on theories of a confluence of cultural indoctrination, familial pressures and aberrant behavior specific to them as individuals. The district court denied defendants' requests for downward departure on these grounds. Fadi was sentenced to twenty-four months in prison and fined $1500, followed by a two year period of supervised release if he is not deported. Robert was sentenced to twenty-one months in prison and fined $1500, followed by a one year period of supervised release if he is not deported. Robert and Fadi filed timely appeals, alleging that the district court erroneously concluded that the asserted bases for downward departure were insufficient as a matter of law and did not provide justification for a downward departure.

## II.

■ Defendants Robert and Fadi allege that the district court erred by not departing downward under § 5K2.0 of the U.S. Sentencing Guidelines, based on aggravating or mitigating circumstances not adequately taken into consideration under the guidelines. Specifically, defendants argue that the district court should have departed further downward from the sentence calculated under the guidelines because a combination of extreme cultural conditioning and familial pressures resulted in extraordinary circumstances not accounted for under the guidelines. In particular, defendants explain that they were raised in Lebanon where the political situation dictated complete reliance on their family unit for safety and security and where the culture mandates respect and service to elders. Upon moving to the United States, the close family interdependence and living arrangements were maintained and defendants lived in a two bedroom apartment with their grandmother, grandfather, sister, brother-in-law and two children. Defendants' uncle, Lahoud, had been pivotal in providing protection and support to the defendants and their family while in Lebanon. The combination of these factors, according to defendants, molded them in an extraordinary manner not generally experienced by others, and left them feeling they had no choice but to comply with Lahoud's requests that they aid him in the drug sale, thus resulting in a single act of aberrant behavior. Defendants allege that the district court incorrectly ruled, as a matter of law, that it could not depart downward based on these factors.

■ Title 18, U.S.C. § 3742 governs appellate review of sentences under the U.S. Sentencing Guidelines. The Sixth Circuit has outlined the appellate standard of review of a sentence imposed by the district court:

A district court's failure to depart from the Guidelines range is not cognizable on appeal under 18 U.S.C. § 3742(a) when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from an incorrect application of the Guidelines range, and is not unaware that it had discretion to depart from the Guidelines range.

*United States v. Watkins,* 179 F.3d 489, 503 (6th Cir.1999). Thus, a district court's informed decision not to depart from the Guidelines is not reviewable. The Su-

preme Court has imposed review for abuse of discretion in cases where the district court did not believe that it had authority to depart. *United States v. Koon,* 518 U.S. 81, 99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

Although sentencing was conducted separately, the district judge indicated that his reasoning applied equally to Robert and Fadi. After Robert's attorney argued for downward departure based on the combination of cultural indoctrination and a single act of aberrant behavior, the district court responded as follows:

> [T]he court recognizes that it has the legal authority to depart downward ... on the cultural indoctrination theory.... Likewise, the court recognizes its legal authority to depart downward in the Sixth Circuit for a single act of aberrant behavior, and obviously ... I can certainly depart downward as a matter of law were I to consider [these factors] in tandem.
>
> Having disposed of the legal issues, again, we are back to the factual considerations.
>
> ...
>
> I just don't think in this case, this particular Defendant's situation justifies a downward departure on the grounds of cultural indoctrination or family ties.
>
> ...
>
> Nor does the court feel that the two, cultural indoctrination/family ties and single act of aberrant behavior, when considered in combination justify a downward departure.
>
> ... the Court simply does not feel that those facts are beyond the heartland of transactions generally, so I would overrule the request for downward departure.

(Transcript, J.A. 96–99.) The district court clearly recognized its authority to depart downward but chose not to exercise that discretion based on the facts in this particular case.

Despite the quoted language from the court, defendants argue that the district court did not recognize its discretion to depart downward. Defendants allege that the district court failed to recognize its discretion when it concluded that it could not depart in this case without then being required to depart downward in every case involving a culture of respect for and service to elders. Specifically, defendants rely on the district judge's statement that, "I would be violating the sentencing guidelines by taking a consideration which has to be exquisitely fact sensitive in the individual case and transforming it into a generalized ground for a downward departure available to anyone from a society that reveres and respects its elders." (J.A. 98.) This statement, however, does not indicate that the district court failed to recognize its discretion. Rather, the statement explains it's conclusion that the specific facts of this case do not distinguish it from any case involving a culture demanding respect for elders and, therefore, do not warrant a departure. The court acknowledged its discretion but chose not to depart from the guidelines. The district judge's failure to depart downward is therefore not reviewable by this court.

For the foregoing reasons, we conclude that defendants' claims cannot be reviewed by this court, and we dismiss these appeals.